DANIEL DEMPSEY et al., Appellants, *v.* JAMES N. KIPP, Respondent.

Where, under a parol consent, given for a sufficient consideration by one of two adjoining proprietors, a private road is laid out and opened, one-half upon the lands of each, for the benefit of a third party, the fact that the other proprietor closes up that portion of the road passing over his land does not annul the consent, but it is still operative and effectual to give a right of way over the land appropriated in pursuance thereof, precisely the same as if the other proprietor had left the portion of the road upon his land undisturbed. The restriction of the travel to the land

as to which the consent was given, imposes no new burden upon it, and therefore does not affect the rights therein of the party entitled to the way.

Where a permanent right of way is acquired by a tenant, as appurtenant to the demised premises, at the expiration of the tenancy it enures to the benefit of the landlord.

One L. conveyed certain premises to E. He afterward applied to the commissioner of highways to lay out a private road for his use across the lands of third parties, to give access from the highway to the land so conveyed. The road was laid out, worked and used by the owners and occupants of' the said land, with the consent of such third parties, one of whom subsequently obstructed the way over his land. In an action to restrain further interference and to recover damages, plaintiff, who claimed under E., offered to show that, at the time of the conveyance from L. to E., the former agreed, by parol, to procure the right of way to the highway, as a condition of the purchase, a part of the purchase-money being retained until the condition was performed. The evidence was rejected. *Held*, error; that the rule excluding evidence to vary a written instrument had no application, as it could not be invoked by a stranger to the contract; and that the right of way procured by L., in pursuance of such agreement, enured to the benefit of E., and passed as appurtenant to the land.

*Dempsey et al.* v. *Kipp* (62 Barb., 311) reversed.

(Argued September 21, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court of the fourth judicial department, affirming a judgment entered upon the report of a referee dismissing the complaint. (Reported below, 62 Barb., 311.)

The action was brought to restrain the defendant from interfering with a private road which it was claimed existed over the defendant's land in the plaintiffs' favor, and to recover damages for obstructing the same.

The following facts appeared at the trial:

In March, 1842, John Arnsberger and Thomas Miller were respectively the owners of two farms in the town of Fayette, Seneca county. Arnsberger's farm was immediately south of one owned by Jacob Leddick, lying between it and the highway, and was known as lot number nineteen. Miller's farm adjoined Arnsberger's on the west, and was known as lot number eighteen. Leddick, on March 9th, 1842, conveyed to John Espenour, the plaintiff's grantor, the farm above mentioned, lying north of number nineteen. After

this conveyance was made, viz., on March sixteenth of the same year, Leddick applied to the commissioner of highways to lay out a private road for his use. The description in his application was as follows: "Commencing at the south corner of lots number eighteen and nineteen, running north on the line of said lots through the lands of John Arnsberger and Thomas Miller, to the south line of the farm now owned by John Espenour, and occupied by me."

On the trial, the plaintiff offered to show that there was a parol agreement before the conveyance by Leddick to Espenour, that the former should procure a right of way out to the highway, as a condition of the purchase, and that Espenour was to retain a part of the purchase-money until this condition was performed. The offer was rejected, and the plaintiff duly excepted.

On March 23, 1842, twelve free-holders of the town met at the south-west corner of Arnsberger's farm (coinciding with the south-east corner of Miller's) and certified in writing the necessity of the road. At the same time and place, the commissioners assuming to act upon the application and certificate, made an order in writing laying out the road. The boundaries of this road are thus given: "Beginning at a stake standing at the south-west corner of Espenour's land on lot number nineteen, thence on the west line of said lot south one degree west twenty-five chains forty links to a stake at the south-east corner of lot number eighteen; and it is further ordered that the line above described shall be the west line of the said road, and that said road shall be of the width of one rod." This order required the road to be laid out wholly over the lands of Arnsberger. The referee found, as matter of fact, that when the road was actually worked, the line fence between the Miller and the Arnsberger farm was removed to the west of the line of lots eighteen and nineteen about eight feet, so that one-half of the roadway was on the Miller farm and the other half on the Arnsberger farm. He further found that Arnsberger acquiesced in such a road as that which was actually laid out, but stated

that he did not find that he ever assented to a road one rod in width, all to be taken from his own farm. The assent of Arnsberger, as he found, was to such a road as Leddick had applied for and the jurors had certified was necessary, and such a one was actually opened. The findings further show that the road was opened, worked and turnpiked in some places, and sluices put in across the road on the Arnsberger farm. A fence was built on the east side of the lane, the rails being cut and split from the timber growing on the land used, and the wood was removed by Arnsberger. He was standing by when the parties in interest were chopping the wood and timber growing on the land, and did not raise any objection to their proceeding with the work and opening of the road, but expressed himself as having received ample compensation therefor. The road was used in the manner in which it had been laid out by Leddick and Espenour, his grantee, until the year 1848–49, when a subsequent grantee of the Miller farm removed the west fence of the lane back to the line of the lots eighteen and nineteen. By this removal the corners of the fence were set on the worked part of the road. The Arnsberger farm having been sold to Nicholas Kipp, his tenant, Ralph Kipp, proceeded to remove the fence on the east side of the lane, and to place obstructions in the way of the owners or occupants of the Leddick farm, so as to prevent them reaching the highway. This was done under the claim that such occupant had no legal interest in the road or land, and had no right of way. These obstructions were thrown down from time to time by the occupants of the Leddick farm. Defendant, then occupying the Arnsberger farm, replaced them.

The referee's conclusions of law were that the conveyance by Leddick to Espenour (being before the application of Leddick for the private road) did not transfer to the grantee any interest in such private road, and that no interest whatever in the private road was conveyed by Leddick to Espenour, as appurtenant or otherwise to the fifty acres; that all the proceedings for laying out the road were void under the laws

of New York, and that Leddick, Espenour, and the plaintiffs not having used the road uninterruptedly and adversely for twenty years, had gained no title by prescription.

Judgment for a dismissal of the complaint was entered on his report.

*Burton & Ten Eyck* for the appellants. The road having been laid out with the consent of the owner became a lawful private road, even though the consent was by parol. (*Baker* v. *Braman*, 6 Hill, 47.) Arnsberger's acts and admissions were a complete ratification and confirmation of the acts of the commissioners. (*Baker* v. *Braman*, 6 Hill, 47; *Noyer* v. *Chapin*, 6 Wend., 461 ; *Ernsberry* v. *Corne*, 3 Cow., 571.) It was error to receive evidence of a conversation between the witness N. R. Kipp and Lambert as to what was said about the land when the latter bought it of him. (*Garfield* v. *Kirk*, 65 Barb., 469.)

*F. O. Mason* for the respondent. The proceedings in laying out the private road were illegal and void. (*In re Albany St.*, 11 Wend., 149; *In re John and Cherry Sts.*, 19 id., 659; *Embury* v. *Conner*, 3 Comst., 511; 1 R. S. [1st ed.], 517; *Taylor* v. *Porter*, 4 Hill, 140; *Baker* v. *Braman*, 6 id., 47; *Baldwin* v. *Middleberger*, 2 Hall, 176; *Pritchard* v. *Mer. L. Ins. Co.*, 91 E. C. L., 622, *Bruce* v. *Pearson*, 3 J. R., 534; *Tuttle* v. *Love*, 7 id., 470; *Myers* v. *Smith*, 48 Barb., 614; *McCotter* v. *Mayor, etc.*, 37 N. Y., 325.) The right of private way began and ended with Leddick. (*Taylor* v. *Porter*, 3 Hill, 142; *Lambert* v. *Hoke*, 14 J. R., 383.) Espenour had no rights in the land save what the deed gave. (*Renard* v. *Sampson*, 2 Kern., 561; *Howes* v. *Baker*, 3 J. R., 506; *Houghtaling* v. *Lewis*, 10 id., 296; *Vandervoort* v. *Smith*, 2 Cai., 154.) Such a right of way could not be created by parol. (Wash. on Easements, 18; *Miller* v. *A. and Syr. R. R. Co.*, 6 Hill, 61; *Foot* v. *N. H. and N. Co.*, 23 Conn., 214; *Eggleston* v. *N. Y. and H. Co.*, 35 Barb., 162; *Pitkin* v. *L. I. R. R. Co.*, 2 Barb. Ch., 221; *Mumford*

v. *Whitney*, 15 Wend., 380; 3 Phil. Ev., 350, note 936;
Hilliard on R. E., §§ 60–64; 5 B. & C., 233; 7 Bing., 690;
1 Ad. & Ell., 536; *Selden* v. *D. and H. Canal Co.*, 29 N.
Y., 634.) Such an agreement for a right of way amounted
only to a parol license to go over the land, and was revocable
at will and not assignable. (Wash. on Easements, 8, § 11;
*Ex parte Coburn*, 1 Cow., 570; *Mumford* v. *Whitney*, 15
Wend., 380, 391.) The right of way could not be transferred
by deed unless it had, at the time of the delivery of the deed,
a legal existence. (*Pitkins* v. *L. I. R. R. Co.*, 2 Barb. Ch.,
221; *Mumford* v. *Whitney*, 15 Wend., 380.) If it had no
legal existence, it did not pass as an appurtenance. (2 Hilliard on R. P., 356, § 62; *Plant* v. *James*, 5 B. & Ad., 191;
*Kenyon* v. *Nicholas*, 1 R. I., 411.) To have given plaintiffs
a right to the road by prescription there must have been continuous and uninterrupted adverse use and enjoyment thereof
for twenty years, with the owner's knowledge and acquiescence. (*Carlisle* v. *Cooper*, 4 C. E. Green [N. J.]; *Stuyvesant* v. *Woodruff*, 1 N. J., 133; 2 Hilliard on R. E., 19,
§ 55; *Flora* v. *Carbeau*, 38 N. Y., 111; *Luce* v. *Cartey*,
24 Wend., 451; *Hart* v. *Vose*, 19 id., 365; *Parker* v. *Foote*,
19 id., 309; *Yard* v. *Ford*, 2 Wm. Saund., 175 *d.*, note;
*Plympton* v. *Converse*, 44 Vt., 158.) Plaintiffs' offer to show,
by Espenour, a parol agreement between Arnsberger and Leddick as to who should fence the road was properly rejected.
(*Mumford* v. *Whitney*, 15 Wend., 380; *Stearns* v. *Tappin*, 5
Duer, 294.) Arnsberger being dead, it was inadmissible.
(Code, § 399.) It was proper to receive in evidence Espenour's declarations, he being the owner and in possession
of plaintiff's farm. (*Jockson* v. *Bard*, 4 J. R., 230; *Pitt* v.
*Wilder*, 1 Comst., 512; *Gibney* v. *Marchay*, 34 N. Y., 301;
*Moore* v. *Hamilton*, 54 id., 666.) A judgment will not be
set aside for the admission of an item of improper testimony
when it is apparent it could not have affected the finding, or
where there is ample testimony beside to authorize it. (*Cary*
v. *Sprague*, 12 Wend., 41; *Smith* v. *Kerr*, 1 Barb., 155;
*Brown* v. *Hoburger*, 52 id., 15; *Ashley* v. *Marshall*, 29 N.

Y., 494; *People* v. *Gonzales,* 35 id., 59, 60; *Vandervoort* v. *Gould,* 3 Tr. App., 62.)

DWIGHT, C. It was properly conceded by the counsel for the plaintiff, in the present case, that the proceedings for laying out the road were, in view of the law as it existed at that time, unconstitutional and void. (*Taylor* v. *Porter,* 4 Hill, 140.) These proceedings are only important so far as they bear on the acts of the grantors of the plaintiff, and shed light on the nature of the consent of Arnsberger to the act of laying out the road over his land. It was not disputed by the defendant that, while the acts of the commissioner in laying out the road were nugatory, the plaintiff might have a right of way derived from the consent of Arnsberger. Such must be the law on general principles of equity, even though the consent be given by parol, if there be sufficient in the case to take it out of the statute of frauds. The question at issue between the parties is thus narrowed down to the nature of Arnsberger's consent. On this point there was some conflict of evidence at the trial. The referee has found as a fact, that though the commissioner in his order directed the road to be laid out wholly over the land of Arnsberger, yet, as a matter of fact, it was laid out in part over his land, and in part over that of Miller, and that Arnsberger only consented to such a road as that, and not to one a rod wide, laid out wholly over his own land. This, I think, is the reasonable construction of his findings, considered as a whole, though it must be admitted that his phraseology is not absolutely clear. There being some evidence to sustain this finding, it cannot be disturbed in this court. Rogers, the grantee of Miller, having revoked any license which his grantor may have given to Leddick to pass over his portion of the land, the defendant, as successor of Arnsberger, claims that Arnsberger's consent is thus practically nullified. His argument is, briefly stated, as follows : Arnsberger consented to a road, one rod wide, to be laid out, one-half over his own land, and one-half over that of Miller; the road, as to Miller's half, is inoperative, therefore Arnsberger gave no consent to any road what-

ever — not even to one of half a rod in width. The plaintiffs, on the other hand, insist that Arnsberger's consent is still operative and effectual as to a road, one-half rod in width, over his own land. On this point, I think that the weight of argument is with the plaintiffs. True, by the practical acts of the parties, the road did not take effect exactly as was intended, still the variation was immaterial as between the plaintiffs' grantor and Arnsberger. It in no respect increased the burden on Arnsberger's land. If the road had been laid out on the land of both parties, the plaintiffs might lawfully have traveled wholly over the lands of Arnsberger. They could do precisely what he might do with a road half a rod in width. It cannot be supposed, in law, that his consent would have been affected by a change in circumstances wholly immaterial.

Moreover, Leddick advanced a consideration for the road which Arnsberger retained. The latter must be supposed thereby to have waived any variation between his real and his apparent consent. *Prima facie*, the plaintiffs had an equitable right, on this ground, to specific performance; while he cannot have the whole road, he may insist on such part as the successor of Arnsberger is able to give him. Had Leddick, when the road was laid out, been the owner in fee of Espenour's lot, I should clearly have been of the opinion that, as between him and Arnsberger, he would have acquired a permanent right of way.

I have now reached the question as to the effect of Leddick's acts in relation to Espenour. He may, in the first instance, be considered as tenant at will of Espenour. In that character it may be assumed that he acquired a right of way from Espenour's land to the highway. The conduct of the parties shows that their intention was that the right of way should be permanent. Trees were cut down, sluices were made, and a fence put up between the lane and the residue of Arnsberger's land. These acts are inconsistent with the mere use of the road for a fugitive and temporary purpose. They look to continuance of the road for the use of the owner.

The intention being clear, there appears to be no difficulty in holding that Leddick, as tenant, may be the medium whereby the right of way passed to his landlord, Espenour. He was a sort of bailiff or agent to make the acquisition for his landlord. As soon as Leddick acquired the right, it enured to the landlord's benefit. It is settled law, that all that the tenant thus acquires from third persons appertains to the landlord. The rule is applied even to encroachments made by him upon the lands of others; *a fortiori*, would it be applicable where the acquisition is made by consent of, or through contract with, the owners of adjoining lands. (1 Wash. on Real Property, 483.) The cases on the subject of encroachment may be stated by way of illustration. They maintain that if a tenant, while in possession, encroaches upon adjacent lands, and encloses portions of them, and thus acquires a prescriptive title, he is presumed by law to have acted with a view to add to the interest of his landlord. Undoubtedly, this presumption may be rebutted, but where there is no countervailing proof, the rule is of uniform application. (*Doe* v. *Jones*, 15 M. & W., 580; *Doe* v. *Rees*, 6 C. & P., 610; *Andrews* v. *Hailes*, 2 Ellis & Black., 349; *Doe* v. *Tidbury*, 14 Com. Bench, 304; *Lisburne* v. *Davies*, L. R. [1 C. P.], 260; *Kingsmill* v. *Millard*, 11 Exch., 313.) These cases establish the doctrine that a tenant, even from year to year, has a capacity to acquire a permanent interest in adjacent lands belonging to third persons for the use of the leased property, which shall enure *to his own benefit while the* tenancy continues, and on its expiration shall appertain to his landlord. There appears to be no difference in principle whether the acquisition is made by prescription or by contract. The tenant's intent is the main subject of inquiry. In the case at bar, the intent of both parties, as has been already shown, is plain. From all the acts taken together, it is impossible to suppose that the intent was any thing else than to give Espenour a continuing right of way, Leddick having, at the time the road was laid out, the mere possession, to be terminated at Espenour's will.

The case may now be regarded from another point of view. The plaintiff offered to show, at the trial, that there was a parol understanding between Leddick and Espenour, prior to the purchase by the latter of the property of the former, and being a part of the transaction, that Leddick should procure a right of way, and that a portion of the purchase-price of the land was to be retained by Espenour to abide the result. Had such testimony been admitted, would it have been material? In the outset it must be conceded that if there had been such a parol understanding, it could not have been received in evidence as between the parties to the deed. The rule that parol evidence is inadmissible to vary the terms of a valid written instrument would have been applicable. A stranger to the contract, however, cannot invoke this rule. (1 Greenleaf on Evidence, § 279.) It is there said, " the rule is *applied only in suits between the parties* to the instrument, as they alone are to blame if the writing contains what was not intended, or omits that which it should have contained. It cannot affect third persons." (1 Pothier on Obligations, by Evans, p. 4, chap. 2, art. 3 *n ;* 2 Stark. Ev., 575 ; *Edgerley* v. *Emerson*, 3 Foster, 555 ; *Langdon* v. *Langdon*, 4 Gray, 186.) In the case at bar, the defendant cannot avail himself of this rule. It is immaterial to him whether the agreement to procure a right of way was introduced into the plaintiff's deed or left to oral understanding.

The only serious inquiry is, whether the right of way, obtained under such a parol agreement, would pass to Espenour as appurtenant to his land. It certainly would not in the view of a court of law, as the rule that it must be in writing and under seal, as an incorporeal hereditament, was not complied with. I see no objection to the view that it would be transferable in equity. Suppose that there had been a clause in Espenour's deed, that Leddick would procure for him a right of way, and he had subsequently fulfilled the agreement in an imperfect manner, by obtaining a writing not under seal — would not that, in equity, have belonged to Espenour? If so, the result must be the same in the case at

bar, as the parol agreement for a right of way, executed and based upon a consideration, is of equal validity with a written agreement not under seal. So long as Arnsberger intended to grant a permanent right of way, and Leddick had agreed to procure one for Espenour, justice can only be done by holding that the parties substantially accomplished what they intended. This view is strengthened by the fact that the statute concerning private roads, provides that they shall be laid out for the use of the applicant, his heirs and assigns. It thus recognizes the assignability of the road, and it may be assumed that the consent of Arnsberger was, in accordance with the idea underlying the statute, to a road which was to be transferred or assigned with the land to which it was naturally an incident.

If this view is correct, the right to the way passed through the intermediate grants to the plaintiff. (Washburn on Easements, 25, and cases cited.) The court below, accordingly, erred in excluding the offer to show the parol agreement between Leddick and Espenour.

The judgment should be reversed.

REYNOLDS, C. The question is, whether the plaintiffs have such an interest or right of way from their own land through land claimed by the defendant as that upon its being closed up or obstructed, by the defendant, an action can be sustained by the plaintiffs for the injury thus occasioned or threatened. The question must, probably, be determined upon the facts found by the referee, before whom the case was tried in the court below, and, so far as I regard them material, may be stated as follows: Prior to 1842 Jacob Leddick was the owner of the farm now owned by the plaintiffs, containing about fifty acres. The west line of the Leddick, or plaintiff's farm, was the division line between military lots numbers eighteen and nineteen, in the town of Fayette in the county of Seneca; and the south line was between the land of the plaintiffs and that of the defendant, then owned and occupied by John Arnsberger — both the farms

of the plaintiffs and the defendant being subdivisions of military lot number nineteen, before referred to. The land adjoining both farms on the west was, in 1842, owned by one Thomas Miller, being military lot number eighteen, before named. In March, 1842, Leddick conveyed to John Espenour, and through him, in 1865, the plaintiffs derived their title to the fifty acre farm. After Leddick had conveyed to Espenour, and in March, 1842, in pursuance of a parol agreement made by him with Espenour at the time of his conveyance, and on the 16th of March, 1842, he made application to the commissioners of highways of the town of Fayette to lay out a private road for his use, commencing at the south corner of lots eighteen and nineteen, and running north on the line of said lots, through the lands of John Arnsberger and Thomas Miller, to the south line of the land of Espenour, then occupied by Leddick. This application was successful; and on the 23d of March, 1842, the commissioners ordered the road to be laid out to the width of one rod, making the line between lots eighteen and nineteen the west line of the road, and, of course, locating the whole of it on the land of Arnsberger. This road was soon after opened, or supposed to be, in this manner: The fence between the Miller and the Arnsberger farm was removed, as the referee states, "to the west line of the lots, about eight feet," and the road opened and worked, and turnpiked in some places. Three sluices were put in across the road, on the Arnsberger farm, and one on the Leddick farm; a fence was built on the east side of the lane, through Arnsberger's cleared land, the rails being cut and split from timber growing on the road, and the wood was removed from the road by Arnsberger. In this condition the road remained until 1848, or 1849, when one Rogers, having succeeded to the title of the Miller farm, removed the west fence, along the lane (or road) back, on the line between military lots numbers eighteen and nineteen, setting the corners of the fence on the worked part of the road and in part on the sluices across the same. Afterward, the owners and occupants of the Arnsberger farm took away the fence on the east

side of the lane or road, and committed various acts obstructing the use of the road or any part of it; and for such alleged injuries the action is brought.

It is found by the referee that Arnsberger acquiesced in such a road as was opened by the commissioners, one-half on the Miller farm and one-half on his own, but he did not find that he ever assented to a road one rod wide to be opened wholly on his own farm. The referee then finds that "after Rogers had removed his east fence back on the line between lots numbers eighteen and nineteen, *thus, in fact, crowding the whole road on the Arnsberger farm,* I do not find any assent on the part of Arnsberger, or his grantees or tenants, of whom the defendant is one, to such a location of the road."

The effect of this finding is, I think, no more than that Arnsberger and his successors in title or possession did not assent to the act of Rogers in removing the fence on the west line of the road as opened, for that act did not *per se* thrust any more of the road on the land of Arnsberger than had hitherto, with his consent, been occupied for that purpose, and as I understand the case as it is presented for our judgment, no matter whether the plaintiff has any claim against Rogers or not, no more extensive claim is made against the successors of Arnsberger in the title and possession than would or could have been made if Rogers had never removed the fence on the west line of the road; and, as the matter stands before us, I do not see but that as between the present parties, it must be considered as if Rogers had never disturbed the west line of the fence as located when the road was opened in 1842, and to the road thus opened I think the case does not show that the parties represented by the defendant have ever made any objections. The plaintiff in this case, making no present complaint of the acts of Rogers in closing up one-half of the road to which their predecessors in title claim to have been entitled, and content themselves with requiring an observance on the part of the defendant of the rights they had in so much of the road as was upon the Arnsberger farm, if altogether it was maintained to the

width of one rod. In that case eight feet only was required to be opened upon the farm last mentioned, and that is the extent of the plaintiff's claim. It is quite impossible to see how the defendant has suffered by the act of Rogers, and the plaintiffs for the present waiving any claim against Rogers, only ask that he shall be held to the same obligation that existed at the time the road was laid out; that is to leave undisturbed eight feet of the road on the land now owned by the defendant, precisely the same as if Rogers had not repudiated as to the eight feet of the road opened upon his land. If the plaintiffs are content with the eight feet of road, it certainly works the defendant no injury, for the way is only needed by the owner or occupant of the Leddick farm.

The order of the commissioners appears to have contemplated a road laid out wholly on the land of Arnsberger, if it be assumed that the drawn line between the farms of Arnsberger and Miller was the line between military lots numbers eighteen and nineteen, and there may be some confusion in the evidence as to that fact. It however appears to be the fact, and it is so claimed by the defendant, that when the road was actually opened and worked, one-half of it was on the land of Miller, and the other half on the land of Arnsberger. That Miller assented to this location and removed his fence eight feet further west, is quite apparent, and that Arnsberger gave his consent is not now denied. The actual laying out, locating and opening of the road was, therefore, consented to by the owners of the land over which it was laid, and I do not at present see why it was not lawfully laid out. (*Baker* v. *Braman*, 6 Hill, 47.) It was an open and notorious act in which all the parties then concerned participated, and none uttered a word of objection or dissent, and it was used as a private road by the owners and occupants of the Leddick farm for many years thereafter, with like acquiescence and assent. When Rogers became the owner of the Miller farm, he interfered with the west half of the road, but whether rightfully or wrongfully it is not for us now to determine. But this act of Rogers in no way concerned

Arnsberger or his successors in title or possession, and conferred upon them no right to disturb so much of the road as was laid over the land of Arnsberger; and so far as I have been able to discover, the defence rests upon no other substantial foundation. If, as I am inclined to think, the road in the beginning was properly laid out, located and opened by common consent, the act of Rogers was wrongful, and that certainly gave the defendant no license to commit a like wrong; but if Rogers had excuse for his action, it affords the defendant no protection for a violation of the plaintiffs' rights in any portion of the road.

In the view of the case I have taken, I do not find it necessary to discuss the question whether or not, under any circumstances, easements or servitudes in land may be acquired other than by grant or prescription; but I think, upon the facts of this case, Arnsberger and his successors in title should be estopped from asserting any right to the eight feet of land laid out and occupied as a way, to the detriment of the owners of the Leddick farm. But the defence appears to rest upon the theory that the road, as actually opened, was one to which Arnsberger gave his unqualified consent, and that no fault could be found with it if Rogers had not interfered with that part located on the then land of Miller, with his consent; but inasmuch as Rogers had undertaken to repudiate the act of Miller, whether rightfully or wrongfully, the defendant thereby acquired the right to imitate his example by attempting to repudiate the acts and consent of Arnsberger, so far as the road had been located on his premises. Such a defence, I think, ought not to prevail, and I am of the opinion that a new trial should be granted.

All concur.

Judgment reversed.