HENRY BEDLOW, in His Own Right and as Administrator, etc., of EDWARD A. BEDLOW, Deceased, and Others, Appellants, *v.* THE NEW YORK FLOATING DRY DOCK COMPANY, Respondent.

*Rights of owners of uplands in New York city to land between high and low-water mark — when a possessory action to recover a pier erected by authority of the city will not lie — when a tenant may retain an interest in adjacent lands, acquired by him in his capacity of tenant.*

An owner of lands in the city of New York, fronting on the East river, has no rights whatever in respect to the lands below high and low-water mark, except such as he may have derived by a grant from the owner thereof, the corporation of the city of New York.

*Furman* v. *New York* (5 Sandf., 16; affirmed 10 N. Y., 567) followed; *Yates* v. *Milwaukee* (10 Wall., 497); *Weber* v. *Harbor Commissioners* (18 id., 64) distinguished.

Where the corporation authorizes the construction of a pier by other persons, in disregard of the privileges conferred upon the adjacent owners by the acts of the legislature, the remedy of the party aggrieved is by an action to recover damages for the specific wrong he has suffered by being deprived of the opportunity to contribute to the expense of construction, and of thereby acquiring an interest in the pier, and not by a possessory action to recover the same.

*Whitney* v. *The Mayor* (6 Abb. N. C., 339) followed; *Langdon* v. *Mayor* (93 N. Y., 129) distinguished.

The rule that where a tenant of land acquires an interest in adjacent lands, by reason of such tenancy and for the use of the leased premises, it enures to his benefit only while the tenancy continues, and that on the expiration of the tenancy it reverts to the landlord, is not applicable to any cases in which it is not proved that the interest in the adjacent lands was acquired for the use of the leased premises.

Appeal from a judgment, entered upon the decision of the court at circuit dismissing the complaint, with costs, the trial having been had before the court without a jury.

By the Dongan charter of 1686, the city of New York was granted the title of all the land situate between high and low-water mark surrounding the island of Manhattan. By the Montgomery charter of 1730 there was granted to the city of New York from the north side of Corlears Hook to Whitehall all the land under water for 400 feet from low-water mark into the East river. In April, 1798, the corporation of the city of New York was

empowered to lay out streets and wharves in front of those parts of the city adjoining the rivers and along the rivers as it might think proper, at the expense of the proprietors of the land adjoining or nearest and opposite to the said streets or wharves, in proportion to the breadth of their several lots, and by the act of 1801 the corporation was empowered to direct piers to be sunk and completed in front of said streets or wharves, at the expense of said proprietors, and if the proprietors should neglect or refuse to make the said piers the corporation was empowered to build the said piers itself, and receive to its own use all the wharfage derived therefrom, and by the act of April 2, 1806, it was also empowered to grant the right to make such piers, and the right of receiving the profits thereof, to any person or persons, in fee or otherwise, upon such terms as it may think proper. Prior to November, 1806, Henry Rutgers was the owner of certain property in the city of New York, situated between Montgomery and Clinton streets, fronting on the East river. In November, 1806, the mayor, aldermen and commonalty of the city of New York by deed granted to said Rutgers, his heirs and assigns forever, amongst other property, a lot of land opposite to that part of the ground hereinbefore mentioned, containing in depth on the west side ninety-four feet and on the east side eighty-six feet, and in front, on the East river or harbor of said city, ninety-two feet six inches, together with all and singular the easements, profits, commodities, advantages emoluments, hereditaments and appurtenances to the said lot of ground belonging or in anywise appertaining. In said deed the said Henry Rutgers covenanted for himself, his heirs and assigns, that he or they would, at their own proper costs and expense, build and erect a good, sufficient and firm wharf, pier or street, of seventy feet in breadth, on the south side of the said lot of ground conveyed in said deed contiguous to the East river, which wharves, piers or streets should be built, kept and repaired by the said Rutgers, his heirs and assigns, at his and their proper cost, charges and expenses.

It was also covenanted in said deed that the streets, wharves and piers so to be built should forever remain and be for the free and common passage of, and public streets and ways for, the said inhabitants of the city of New York and all others going and

returning through or by the same in like manner as the other public streets of the said city. The deed also contains covenants as to title and quiet possession. Prior to 1834 a wharf, pier or street was built upon the premises hereinbefore mentioned, such street being South street, and the southerly side of South street being coincident with the southerly side of the grant from the city to Rutgers. It appears, however, from the evidence in the case, that the bulk-head, at the times hereinafter mentioned, in front of the premises hereinbefore mentioned, as conveyed to Rutgers, was more than thirteen feet in the East River beyond the line of the conveyance by the city to Rutgers, and was entirely situated upon land belonging to the city. Rutgers died in 1830, and in September, 1834, his executors leased to Stevenson & Pierce certain lots of ground situate between South and Water streets, and amongst others the lots hereinbefore mentioned, together with all and singular the easements, profits, commodities, etc., to the premises above described, belonging or in anywise appertaining, and particularly the wharf and water privileges to the extent of the rights of said executors for the term of twenty-one years, with a covenant for two renewals. Stevenson & Pierce went into possession of the property and leased and improved the same. In November, 1838, the corporation directed that a pier be built in the slip between Clinton and Montgomery streets, at the expense of the owners on the said slip, under the direction of the street commissioner. The location of said pier was fixed in front of the premises occupied by Stevenson & Pierce. As appears from the proceedings, which will be subsequently referred to, taken in December, 1840, by the common council, public notice of the said resolution was given according to law, informing all those interested in the water front, within the limits described, that if they should refuse or neglect to comply with the directions aforesaid and not contribute their relative proportions of the expenses, that they would thereby forfeit all their interest in the wharf arising therefrom agreeably to the act of the legislature in such case made and provided. Pursuant to said notice, Stevenson & Pierce addressed a note to the street commissioner, setting forth that they were lessees, having the same rights and privileges as possessed by the owners of the soil to the bulk-head between Clinton and Montgomery streets, adjoining the

contemplated pier, and expressing their willingness to build the said pier at their own expense, according to the ordinance of the common council directing the same. They were the only parties who signified any intention in the matter, and, after the lapse of the period directed by law for that purpose, the street commissioner was authorized to grant permission to Stevenson & Pierce to build said pier at their own expense and for their own benefit. Thereupon Pierce, Stevenson having assigned his interest to him, built the pier in question at an expense of some $12,000. In 1840, Pierce being desirous of mortgaging the pier, and some objections apparently having arisen as to his title, applied to the common council for the confirmation of the permission given by the street commissioners to build the pier in question, which permission was duly confirmed by a resolution of the common council, subject to any and all rights which the owners of the fee might, at any time, have, if any, in and to the same. Pierce mortgaged the premises in question as his own to divers people, and in 1848 the pier was conveyed by the then owners thereof to the defendant by a full warranty deed, and the defendant has ever since remained in possession of the same. In June, 1857, the trustees, under the will of Rutgers, renewed the lease of Stevenson & Pierce to the then owner of the said lease, Algernon S. Jarvis, for a second term of twenty-one years, from the 1st of May, 1856, the description of the property being the same as in the original lease. At the termination of the renewal lease, the plaintiffs paid the tenants in possession the value of the improvements upon the premises, and entered upon the upland. The defendant still retained the possession of the pier, and refused on demand to surrender the same to the plaintiffs. In 1882 the plaintiffs, claiming to be the owners of the pier, commenced this action to recover possession of the same. The defendant answered, setting up the title derived from Pierce, and upon the issue thus joined a trial was had and judgment rendered in favor of the defendant, and from such judgment this appeal is taken.

*A. B. Conger* and *Herbert B. Turner*, for the appellants.

*F. N. Taft*, for the respondent.

Van Brunt, P. J. :

It is claimed upon the part of the plaintiff that Rutgers being the owner of the upland, and the grantee of the city of New York, of land to low-water mark, his devisees had the rights of riparian owners to build wharves and piers. It is assumed in this proposition that Rutgers was the grantee of the city, of land to low-water mark. We fail to find any evidence to support this assumption. He was the grantee of the city of land to the south side of South street as it was to be laid out under the covenants of the deed from the city to him. Whether the south line of South street coincided with the low-water mark or not does not appear, and there is no presumption whatever that it did.

It is also assumed that Rutgers, as the owner of the upland, had some riparian rights, derived from the common law, independent of any statutory provisions regulating the procedure of the corporation of the city of New York in the improvement of its water front. In this proposition the learned counsel seems not to have taken notice of the distinction between the rights of riparian owners of land bounded by the sea or on navigable rivers, where the tide ebbs and flows, and the rights of such owners of land bounded on rivers or upon the margins of the same above tide water.

In the case of *Furman* v. *New York* (5 Sand., 16), this distinction is expressly recognized, and it is held that by the common law, the King is seized in fee of all the lands under the navigable waters of his realm and is entitled to grant and convey them, and that he has the right of soil under all rivers within the flux and reflux of the sea, and that it follows from the nature of the property of the crown in the soil under water that riparian owners are not entitled as matters of right to the soil under water in front of their uplands. Upon the affirmance of the above case in 10 New York, 567, this principle was again enunciated and formed the basis of the decision.

The cases of *Yates* v. *Milwaukee* (10 Wall., 497), and *Weber* v. *Harbor Commissioners* (18 Wall., 64), in no way militate against the rule above stated. The question as to riparian rights discussed in *Yates* v. *Milwaukee* did not relate to navigable waters wherein the tide ebbed and flowed, and in the second case cited only the rule as applicable to the first is affirmed. It is true that by the act of April 3, 1807, certain pre-emptive rights were given to riparian owners,

but that act in no way related to land situated south of the northerly side of Corlears Hook, the location of the pier in question. The act of 1807 was a grant to the corporation of the city of New York of 400 feet into the East river from the northerly side of Corlears Hook. The plaintiffs, therefore, had no rights whatever in respect to the lands below high-water mark except such as they may have derived by the grant from the corporation of the city of New York, the owners thereof. It is true that by the acts of 1798 and 1801 above referred to, the corporation were authorized to direct piers to be sunk and completed at the expense of the proprietors of lands lying opposite to the place where such piers should be directed to be sunk; and that in the event of the neglect of said proprietors to sink or make such piers according to the directions of the mayor, etc., it should be lawful for them to sink and make the same at their own expense and receive to their own use, wharfage or to grant the right of making such piers and the right of receiving the profits thereof to any person or persons in fee or otherwise upon such terms as they might think proper. But in the event of a disregard, upon the part of the corporation, of these privileges which were extended by the acts of the Legislature to the adjacent owners and the building of such piers by the corporation or the authorization of their being built by other parties, the adjoining owners did not become the proprietors of the piers thus built.

In the case of *Whitney* v. *The Mayor, etc.* (6 Abb. New Cas., 339, 340), where this question is discussed, the court say : "Without pronouncing a definite opinion whether the proceedings of the corporation were so far regular as to put the respondent in the wrong and produce a forfeiture of his rights, it is enough to decide that inasmuch as the pier has been constructed, the respondent's remedy, if any, is by an action for the specific wrong he has suffered for depriving him of the opportunity to contribute to the expense and of having an interest in the pier to the same extent."

The action in that case was brought upon the theory that the pier was a legal obstruction to the use of the plaintiff's bulk-head, and that the corporation were wrong-doers. The court say : "I am of the opinion that if it should be conceded that the corporation failed to give the respondent the requisite notice to erect or contribute to the expense of erecting the pier, it does not follow that

that structure is a nuisance or a purpresture.    The corporation was the exclusive judge of the propriety of constructing piers -and of the places where they should be situated.    This power was committed to the common council for important public purposes, having relation to the great city of which they were the local legislature.    It was, however, to be exercised with a proper regard to the interests of riparian proprietors, but the structures were to be upon the land under water, belonging to the city and not to the proprietors.    It would, however, be likely to prejudice them by covering a portion of their water front, and to compensate them for this inconvenience they were allowed to have the direct profits arising from the piers if they would be at the expense of constructing them. But it cannot be maintained, because a directing portion of the statute has been disregarded, that an important public work which the city had a general right to construct is to be therefore regarded as a nuisance.    If it were situated upon the respondent's land the case would be different.    *    *    *    If the respondent has sustained an injury in being deprived of an opportunity which the statute intended to secure, him to erect it himself, and have the wharfage arising from it, he is entitled to his action for that specific grievance.    This is not matter of form, for it may be, for aught that has appeared in this case, that the enterprise of constructing the pier was a very unprofitable one, looking only to the direct revenue arising from it, and that the respondent could not, with a proper regard to his own interest, have afforded to erect it.    In such case his damage would be merely nominal."

The case of *Langdon* v. *Mayor, etc.* (93 N. Y., 129) in no way militates against the view hereinbefore expressed.    In construing the grant from the city the court laid particular stress upon the fact that such grant naturally and obviously imported a perpetual grant of wharfage with a perpetual right of free access to the wharf from the adjacent water, and founded this conclusion upon the fact that they were contracting in reference to what was then believed to be the permanent exterior water line of the city on the North river, which line was represented as such permanent exterior line upon the map annexed to the conveyance.    The action of *Langdon* v. *Mayor* was an action for damages caused by reason of the erection of a new wharf or bulk-head in front of plaintiff's wharf, and was in

consonance with the rule laid down in such cases in the case of *Whitney* v. *The Mayor*. It would appear, therefore, that whatever rights of the plaintiff were invaded by the construction of this wharf, it not being constructed upon land belonging to the plaintiffs, an action for possession will not lie.

It is, however, urged upon the part of the plaintiff, that Stevenson & Pierce, the lessees of the plaintiff's ancestor, acquired no rights to the pier except in that capacity, and that, therefore, the rights of their assignees terminated at the expiration of the lease, claiming that when a tenant of land acquires an interest in adjacent lands by reason of such tenancy, and for the use of the leased premises it enures to his benefit only while the tenancy continues, and on the expiration of the tenancy reverts to the landlord. To support this proposition various English cases are cited and reference is also made to the case of *Dempsey* v. *Kipp* (61 N. Y., 462), where this rule seems to be recognized in the opinion of the court. A material distinction exists, however, between the rule claimed and the facts in the case at bar. It is necessary to the rule that the interest acquired in the adjacent lands should be for the use of the leased property. There is no evidence in this case that the pier in question was built for the use of the property leased by Stevenson & Pierce from the plaintiffs' testator. Upon the trial it appeared affirmatively, by the evidence of Mr. Jarvis, that the pier was built for general commercial purposes, he stating that it was built for the purpose of having it for a wharf for the steamers that first began to come to the port of New York — the Sirius, the Great Western and then the British Queen. It would, therefore, appear that the rule claimed on behalf of the plaintiffs has no application to this case. It further appears from the proceedings of the common council that the permission given to Stevenson & Pierce to construct this pier was to be at their own expense and for their own benefit. It is true that the confirmatory resolution was made subject to any and all such rights, if any, which the owners of the fee may at any time have in and to the same. What this phrase may mean does not clearly appear, as the corporation was without dispute the owner of the fee. As has been already seen, whatever rights the adjacent owners of the uplands may have had it did not give them the right to the possession of the pier after its construc-

tion, but simply to an action for damages because of the violation of their rights by this construction, if such rights were violated. That it was not the intention of Stevenson & Pierce to construct this pier for the benefit of the Rutger estate seems to be apparent from the fact that they at once proceeded to exercise absolute ownership over the same, mortgaging the same and conveying the same by a warranty deed in 1848. It further appears that this pier in no way interferes or communicates with the land belonging to the Rutger estate. The bulk-head communicating with the pier is from thirteen to sixteen feet south of the southerly line of the land granted to Rutgers by the deed, and the bulk-head stands upon land, the title to which belongs to the city and in which the Rutger estate has no interest. Under all these circumstances it is difficult to see how the plaintiffs can succeed in establishing a right to the possession of the pier in question as claimed by them. It has not been thought necessary to consider the exceptions to the evidence, as the evidence, if admitted, could not affect the legal proposition hereinbefore stated.

The judgment appealed from must be affirmed, with costs.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed, with costs.