WILLIAM KILBURN & another *vs.* JONATHAN S. ADAMS.

Where a tract of land, which is attached to an academy, is purposely left unenclosed, and an owner of adjoining land passes over such tract for twenty years and more, in common with those for whose use it is appropriated, and more frequently than any other person except them, such passing is to be regarded as permissive, and not adverse ; so that he acquires no right of way, unless he does some act indicating a separate and exclusive use under a claim of right: And the mere facts, that a particular line was more marked by his travel than the general surface of the tract, and that he occasionally levelled a part of such line, which was gullied by rains, are not indicative of a claim of right.

The acts of one of the trustees of an incorporated academy, in passing over unenclosed land which is vested in such trustees, are not to be so readily deemed adverse, as similar acts of a stranger, who has no rights in the land, and is charged with no duty to protect and preserve it.

To support a claim to a right of way to and from an estate, by twenty years' adverse possession, the claim must be shown to have been uninterrupted. Hence, if A. has adverse possession for two years only, and conveys his estate, several years afterwards, to B., who has adverse possession for eighteen years, the two years' possession by A. cannot be added in order to make up the twenty years.

THIS was an action of trespass upon the case, commenced on the 1st of April 1842, in which the plaintiffs alleged that they were owners of a close situate on the highway leading from Littleton Common to Groton meeting-house, and adjoining southerly on the land owned by the trustees of Groton Acade-

my; and that they had a right of way from the north side of said close, over the academy lot, to the highway in front of the same, and that the defendant, on the 21st of October 1841, and on divers other days, stopped up and obstructed the said way. The defendant pleaded the general issue, and, in his specification of defence, averred that he stopped the way by direction of the trustees of Groton Academy. Trial before *Hubbard,* J., who made the following report of the case : —

The plaintiffs, to maintain their right to use the way, introduced sundry deeds, by which they derived title to the land described in their writ; also the last will of James Brazer, proved December 8th 1818, and the deed of David Moores to said Brazer, dated June 4th 1803, which was the most ancient deed offered by the plaintiffs. And to show a right over the academy lot, as appurtenant to their estate, they produced C. Butler, Esq. as a witness, who testified that he had lived in Groton forty one years, and was well acquainted with the plaintiffs' estate; that he was preceptor of Groton Academy from February 1802 till 1810, and from September 1812 to November 1814; that when he went to reside in Groton, that part of the plaintiffs' close, now called the lower garden, and the academy lot adjoining, lay in common; but that the house, which once stood on the plaintiffs' lot, had been burnt; that in May 1805, James Brazer, then owner of the plaintiffs' lot, built the house now standing on said lot, and lived there till his death; and that his son, William F. Brazer, afterwards lived there till 1822; and that there were several intermediate owners, before the estate came into the possession of the plaintiffs: That J. Brazer's barn, when he first built it, was back of the academy; and that his house stood on a side-hill, with a passage way to it from the road, on the south side of the house, which passage was rather steep, but was generally used by persons approaching the house on the south side, though loaded teams sometimes passed the house and came up to it over the academy lot: That there was also a way over the academy lot, which lay open, and that it forked as it approached Brazer's land, one branch turning towards his barn and the academy, and the

other going towards his house and store; and that he used to drive his team and carriages over this way : That there was no substantial variation in the manner of said Brazer's using the way, till his death, though it was a little varied by some trees which the witness set out on the academy ground; but "some of the trees were broken down, in Brazer's getting in, and several by the September gale of 1815 : " That when the witness was preceptor of the academy, he set down four square stones, to mark the four corners of the academy grounds, fearing that, as the ground lay open, the bounds would be lost; that he set three of the stones projecting above the ground, but that the fourth, which came in said Brazer's path, was set below the surface, that it might not interfere with that path : That while one Ammidon owned the plaintiffs' estate, he altered the position of the barn, so that the branch of the way towards it was not used by him as it was used before the alteration : That Ammidon also filled up a gully in the way, and made better passing over it : That the trustees of the academy had no fence round their land, till September or October 1841 : That the academy building was erected in 1793 or 1794, on a green plat, and all persons passed over it freely, in any direction ; but that Brazer, by his travel, wore up the grass, and Ammidon carted dirt upon it to make the way better: That the occupants of the academy building went up the same path, with their wood, as far as convenient, and the academy boys were in the habit of playing on the whole academy lot, and of coasting down it in the winter season.

Another witness testified that he lived with James Brazer, and repaired said way for him, in a number of places, in 1809, so that he could pass over it with a horse and chaise.

A third witness testified that, between 1815 and 1818, he saw said Brazer cart gravel upon the path and repair it, from the corner above the academy, where it had been gullied.

A fourth witness testified that he knew the plaintiffs' estate, when he was at school in Groton, and that there was a travelled path to the house and barn, across the academy lot ; that he (the witness) afterwards owned the estate, and used the pathway, and

was never interrupted by any one; that the surveyor of the high way, at one time, made a ditch along the east side of the highway, and thus cut off the path from the road, but filled it up on the remonstrance of the witness.

The plaintiffs also called an aged witness, who testified that he knew David Moores, and the place where the house that was burnt stood; that Moores kept a store there, and that "they then passed over the corporation land;" that the witness never knew but one track over it; that the house was burnt in 1800 or 1801, and stood near the place where the new house has since been built. On cross examination, he stated that he never carried a load over the pathway, though he had gone over, on foot, to the store, and could not swear that he had ever seen a load go up; that if he were coming from the south, he should have gone up the other way to the house; that he could not tell how the goods were got into the store.

The defendant introduced the deed of Benjamin Bancroft to the Trustees of Groton Academy, and proved that James Brazer was chosen a trustee of the academy, January 10th 1795, and that he continued to be such trustee till his death, November 12th 1818; and that his son, William F. Brazer, was chosen a trustee, April 23d 1820, and died in office, in 1835.

The defendant also read from the records of said trustees the authority to enclose the premises, in 1841.

The judge advised a nonsuit; being of opinion, that as the academy lot had never been enclosed by a fence, and as James Brazer was one of the trustees of the academy, his use of the way was permissive, and by the indulgence of the trustees, and not adverse to their right; and that, as twenty years had not expired since William F. Brazer was in possession of the estate, no adverse right had been acquired by the occupants thereof, since he left it; and that it was not competent to tack the year and seven months, during which William F. Brazer was in possession, prior to his being chosen a trustee, to the subsequent possession of other persons, so as to constitute a period of twenty years' adverse possession. A nonsuit was accordingly entered, subject to the opinion of the whole court.

*B. Russell & E. R. Hoar*, for the plaintiffs. The use of the way by James Brazer, and the subsequent owners of his estate, for more than twenty years, gave them a right of way. User is adverse when it is claimed as a right, and is such as one makes of his own property ; and every thing may be presumed in favor of an ancient use. 2 Pick. 60. *Campbell* v. *Wilson*, 3 East, 294. *Tyler* v. *Wilkinson*, 4 Mason, 402. *Hill* v. *Crosby*, 2 Pick. 466. *Sargent* v. *Ballard*, 9 Pick. 251. *Rogers* v. *Brooks*, 1 T. R. 431, *note*. *Griffith* v. *Matthews*, 5 T. R. 298. *Barker* v. *Richardson*, 4 Barn. & Ald. 579. *Wood* v. *Veal*, 5 Barn. & Ald. 454. *Rugby Charity* v. *Merryweather*, 11 East, 376, *note*. *Church in Brattle Square* v. *Bullard*, 2 Met. 367.

The house being on a side-hill affords a presumption that the builder relied on a right of way to it, across the academy lot, as necessary to the convenient enjoyment of the house. 4 Mason, 404.

The only ground on which it will be contended that the possession of the way was not adverse is, that the Brazers were trustees of the academy. This circumstance, however, does not vary the matter. They might have acquired a right, as well as a stranger, by grant from the corporation, of which adverse possession for twenty years is proof. But if their user, while trustees, is not to be taken into the account, yet the nineteen months' user by William F. Brazer, before he was a trustee, is to be tacked, and then the plaintiffs have more than twenty years' possession. *Payne* v. *Shedden*, 1 M. & Rob. 382. *Melvin* v. *Whiting*, 13 Pick. 184. Unexplained user puts the burden of proof on the defendant. And the question, whether the user was adverse, was for the decision of the jury.

The trustees of the academy might have prevented the gaining of a right of way over their ground, by filing a caveat under Rev. Sts. *c.* 60, §§ 27, 28, and *c.* 119, § 14. Their not having done this is strong evidence that they had granted the right.

*Farley & Mellen*, for the defendant. The facts stated in the report do not show an adverse possession under a claim of right. On this point, the case of *First Parish in Gloucester* v. *Beach,*

4

2 Pick. 60, *note*, is decisive ; and that case has been recognized in *First Parish in Medford* v. *Pratt*, 4 Pick. 228, and *Thomas* v. *Inhabitants of Marshfield*, 13 Pick. 249. See also *Gowen* v. *Philadelphia Exchange Co.* 6 Law Reporter, 103, [since published in 5 Watts & Serg. 141.] *Arnold* v. *Stevens*, 24 Pick. 110. By leaving land open and unfenced, the owner licenses others to pass over it, until he gives notice to the contrary. *Lawton* v. *Rivers*, 2 McCord, 452. No right is acquired in land by a user which can be explained without supposing a grant, or be satisfactorily referred to encroachment only. *Dawson* v. *Duke of Norfolk*, 1 Price, 246.

The Brazers stood in such a relation to the corporation which owned the land, that they could acquire no right of way over it, even if they acted adversely. A trustee shall not be presumed to have violated his trust, nor shall his act prejudice the *cestui que trust*. *Armstrong* v. *Peirse*, 3 Bur. 1898. *Keene* v. *Deardon*, 8 East, 264. *Den* v. *Rice*, Cam. & Norw. 497. *Chalmer* v. *Bradley*, 1 Jac. & Walk. 68.

If the use of the way has been adverse since William F Brazer parted with his estate, yet it has not continued twenty years; and his nineteen months' use of it, after his father's death, and before he was chosen a trustee, cannot be tacked to the subsequent use, for the purpose of making up the twenty years. *Hartwright* v. *Badham*, 11 Price, 396. *Sargent* v. *Ballard*, 9 Pick. 251.

*Hoar*, in reply. In the act incorporating Groton Academy, (*St.* 1793, *c.* 23,) the corporation were called trustees ; but this was a mere corporate designation. There was no trust to be executed by them. They could have alienated the land conveyed to them by Bancroft, or have done any other act that proprietors of other real estate could do. The cases respecting trustees, cited for the defendant, do not bear on the case at bar, as they relate to actual trustees, in whom there was a trust for others. See *Revere* v. *Boston Copper Co.* 15 Pick. 363.

SHAW, C. J. The question is, whether the plaintiffs, owners of an estate adjoining the academy lot, acquired a right of way over that lot, by the adverse and uninterrupted use of such way,

by themselves and the former owners and occupiers of the estate, under the circumstances set forth in the report. The rule we think is, that where a tract of land, attached to a public building, such as a meeting-house, town house, school house, and the like, and occupied with such house, is designedly left open and unenclosed, for convenience or ornament, the passage of persons over it, in common with those for whose use it is appropriated, is, in general, to be regarded as permissive, and under an implied license, and not adverse. Such a use is not inconsistent with the only use which the proprietors think fit to make of it; and therefore, until they think proper to enclose it, such use is not adverse, and will not preclude them from enclosing it, when other views of the interests of the proprietors render it proper to do so. And though an adjacent proprietor may make such use of the open land more frequently than another, yet the same rule will apply, unless there be some decisive act, indicating a separate and exclusive use, under a claim of right. A regularly formed and wrought way across the ground, paved, macadamized, or gravelled and fitted for use as a way, from his own estate to the highway, indicating a use distinct from any use to be made of it by the proprietors, would, in our opinion, be evidence of such exclusive use and claim of right. So would be any plain, unequivocal act, indicating a peculiar and exclusive claim, open and ostensible, and distinguishable from that of others. But the fact that a particular track or line was a little more worn and marked by travel, than the general surface of the lot, or that the adjacent proprietor had occasionally levelled a spot gullied by the rain, could scarcely be regarded, inde pendently of other proof, as indicative of a claim of right. *First Parish in Gloucester* v. *Beach*, 2 Pick. 60, *note.*

In the present case, the court are of opinion that there is no evidence of the use of this way, by any of the plaintiffs' predecessors, until James Brazer built a house there in 1805 ; nor after that time, of any use so exclusive, peculiar, or different from that of all others having occasion to pass and repass, as to found a claim of right for a way over this open lot, attached to and occupied with the academy. The fact that James Brazer

and his son were, for a greater part of the time, trustees of Groton Academy, and members of the corporation in which the estate was vested, is to be taken into consideration, we think, in weighing the evidence. For although the relation was not such as to preclude them from taking an easement by actual grant, or from acquiring one by such unequivocal acts of adverse and uninterrupted possession as to prove a grant; yet doubtful or equivocal acts will not be so readily deemed adverse, as those of a stranger having no rights in the estate, and charged with no duty, growing out of his fiduciary relation, to protect and preserve it. Many of the same acts, which, in a stranger, having no right, and charged with no duty, ought to be deemed adverse, and attributed to a claim of right, would, in the case of a trustee and corporator, be regarded as permissive, and done under an implied license from himself and his associates.

If the acts of Ammidon and others, who came in under William F. Brazer, in 1822, can be considered as indicating, more unequivocally, a claim of right, they would not avail the plaintiffs, because they do not prove an uninterrupted claim for twenty years; the trustees of the academy having passed a vote in 1841, directing the land to be enclosed, and the way cut off. The court are therefore of opinion that the nonsuit must stand.