## DAVIDSON v. DUNN ET AL.

*Real property—Adverse possession—Prescriptive title in land-*
*lord by tenant's occupancy—Use of passageway across vacant*
*lot—Facts necessary to establish adverse title.*

1. If successive tenants use and occupy continuously a way for
   the purpose of ingress and egress from the demised prem-
   ises over adjoining premises owned by a third party, it
   will ripen into an easement by prescription, in favor of the
   landlord's estate, if continued for the required length of
   time, and all other conditions required to create an estate
   by prescription are present.

2. Continuous use of a passageway over an uninclosed vacant
   lot in a city by the owner of an adjoining lot in going to
   and from the residence thereon to the street will not ripen
   into an easement by prescription, unless such passageway
   is of such a permanent construction as to give notice of a
   claim of right.

3. The making of a beaten path across an uninclosed vacant
   city lot by walking from the residence on an adjoining lot
   to the street and return, and at times spreading cinders or
   ashes thereon, is not such an infringement by the owner of
   the adjoining lot on the rights of the owner of the vacant
   lot as will give notice of an adverse claim.

(Decided March 10, 1922.)

APPEAL: Court of Appeals for Mahoning county.

*Mr. E. Davidson* and *Mr. L. L. George,* for
plaintiff.

*Mr. Jesse G. Leighninger* and *Mr. E. H. Moore,*
for defendant.

POLLOCK, J.  This action comes into this court on
appeal and was submitted on the transcript of the
testimony taken in the court below, and further tes-
timony taken before a referee appointed by this

court.   The plaintiff alleges in his petition that he
is the owner of lot No. 2035 in the city of Youngs-
town; that this lot has a frontage of fifty feet on
the east side of Wilson avenue and extends back
seventy-five feet; that prior to 1893 there was a
dwelling-house on this lot, fronting on Wilson ave-
nue and that the then owner of this lot moved the
dwelling-house back to the rear of the lot and erected
on the front a business building.   The buildings on
this lot remain in that position at the present time.
Plaintiff further says that the defendant, Martin
Dunn, is the owner of city lot No. 2007.   He says
that Wilson avenue and Himrod avenue are public
streets in this city and that they intersect each
other at an acute angle; that the lot of the defend-
ant is in the form of a triangle, intersecting Wilson
avenue and Himrod avenue, and lying between the
lot of plaintiff and Himrod avenue.   He says that
he and those under whom he derived title have for
more than twenty-one years traveled from the
dwelling-house on the rear of his lot across the lot
of the defendant Martin Dunn to Himrod avenue;
that they have used this strip or pathway across
defendant Dunn's lot to Himrod avenue as a means
of ingress and egress to plaintiff's dwelling-house
for over that length of time, openly, notoriously and
adversely; that the defendant at the time he pur-
chased his lot had knowledge of the fact that plaint-
iff and his predecessors had so used that property.
He further says that the city of Youngstown is now
seeking to appropriate a part of defendant's lot for
public purposes.   He asks that the defendants be
enjoined from interfering with his right to pass
over defendant Dunn's lot.   The city filed an an-
swer, but did not appear further in the case.   The

only issue which we have to determine now is between the plaintiff and the defendant Dunn. The defendant Dunn filed an answer in which he admitted the ownership of the lot first described in the petition of plaintiff, and the ownership of the lot secondly described therein in himself, but denied the remaining allegations in the petition.

It appears from the testimony in this case that in 1892 the city of Youngstown acquired the lot now owned by the defendant; that about 1908 the city sold this lot to one Peebles, and that shortly thereafter he transferred it by deed to the defendant. The plaintiff's lot since 1893, the time when the dwelling-house was moved to its present position, has been owned by a number of different persons. Plaintiff acquired title thereto in 1916. Plaintiff's lot from the time the dwelling-house was moved to the rear of the lot, until the lot was sold to plaintiff, was occupied by tenants, and not by the owners themselves. A number of different tenants or renters occupied the property during that time, and they walked, in going to and from the entrance of the dwelling-house, directly across the lot of defendant to Himrod avenue, and at times they placed some cinders or ashes upon this walk. The walk was also used by others going to the business room on the front of this lot. There were other paths in other directions over the lot owned by defendant. The tenants of the owners of plaintiff's lot used defendant's lot in this way continuously for more than twenty-one years. Since plaintiff purchased this lot he has continued to use the path across defendant's lot to Himrod avenue. The defendant's lot during the time the city owned it, and continuing to the present time, was unenclosed and was not used

during all of that time, except at the time the street was being paved, when some of the material necessary for paving the street was placed on different parts of the lot.

This lot was owned during a large part of that time by the city of Youngstown.

"Notorious and uninterrupted possession for more than twenty-one years, by a private individual, under a claim of right, of land dedicated to a city for streets or public squares, will bar the claim of the city to its use." *City of Cincinnati* v. *Evans,* 5 Ohio St., 594.

A number of owners of the lot now owned by plaintiff were witnesses in this case. They testified that they had never claimed any right of way across the lot owned by defendant. The question then arises whether or not a title by prescription can inure to the estate of the landlord from acts of his tenants.

This question was before the court of appeals of New York in the case of *Dempsey* v. *Kipp,* 61 N. Y., 462. The second paragraph of the syllabus reads as follows:

"Where a permanent right of way is acquired by a tenant, as appurtenant to the demised premises, at the expiration of the tenancy it enures to the benefit of the landlord."

The same question was referred to again by this court in the opinion in the case of *Bedlow* v. *Dry Dock Company,* 112 N. Y., 263, at 283.

A like principle is announced in 16 Ruling Case Law, 533, Section 5, and also in volume one of the same work, 718, Section 32.

The testimony shows that these tenants rented this dwelling-house without any instruction or di-

rection from the owner regarding the way they
should go from the dwelling-house to Himrod ave-
nue, or any statement of their right to use this walk
or path over defendant's lot for that purpose, but
it was the only convenient way for entering the
dwelling-house and was used by these tenants with-
out any objection upon the part of the owner of de-
fendant's lot, except that there is some testimony
that the present owner at one time objected when
the Moerlein Brewing Company was the owner of
the property now occupied by plaintiff, but after a
talk with some representative of this company no
further objection was made to the use of the prop-
erty. If successive tenants have used and occupied
continuously a way, for the purpose of ingress and
egress to and from the demised premises, over ad-
joining premises owned by a third party, such use
will ripen into an easement by prescription in favor
of the landlord's estate if continued for the required
length of time, and all the other conditions required
to create an estate by prescription are present.

Many prior owners of plaintiff's property testi-
fied that they did not claim any right across de-
fendant's lot. The prior owners at the time they
testified had no interest in the lot of defendant "and
could not, by any act, admission or statement," im-
peach the title or the prescriptive right which had
attached to plaintiff's property. *Hills* v. *Ludwig,*
46 Ohio St., 373.

The further question arises whether the use made
of defendant's lot by the tenants of plaintiff's lot,
as a means of ingress and egress to the dwelling-
house, was adverse to the defendant and his prede-
cessors in title, and under claim of right. The
question was before the court in the case of *Kilburn*

v. *Adams,* 48 Mass. (7 Metc.), 33 (39 Am. Dec., 754).
Chief Justice Shaw said, at page 39:

"The rule we think is, that where a tract of land,
attached to a public building, such as a meeting-
house, town house, school house, and the like, and
occupied with such house, is designedly left open
and unenclosed, for convenience or ornament, the
passage of persons over it, in common with those
for whose use it is appropriated, is, in general,
to be regarded as permissive and under an im-
plied license, and not adverse.  Such a use is
not inconsistent with the only use which the pro-
prietors think fit to make of it; and therefore,
until they think proper to enclose it, such use is not
adverse, and will not preclude them from enclosing
it, when other views of the interest of the proprie-
tors render it proper to do so.  And though an ad-
jacent proprietor may make such use of the open
land more frequently than another, yet the same
rule will apply, unless there be some decisive act,
indicating a separate and exclusive use, under a
claim of right.  A regularly formed and wrought
way across the ground, paved, macadamized, or
graveled and fitted for use as a way, from his own
estate to the highway, indicating a use distinct from
any use to be made of it by the proprietors, would,
in our opinion, be evidence of such exclusive use and
claim of right.  So would be any plain, unequivocal
act, indicating a peculiar and exclusive claim, open
and ostensible, and distinguishable from that of oth-
ers.  But the fact that a particular track or line was
a little more worn and marked by travel, than the
general surface of the lot, or that the adjacent pro-
prietor had occasionally leveled a spot gullied by the
rain, could scarcely be regarded, independently of

other proof, as indicative of a claim of right. *First Parish in Gloucester* v. *Beach*, 2 Pick., 60, *note.*"

The same question was before the supreme court of the state of Washington in *Schulenbarger* v. *Johnstone*, 64 Wash., 202, 35 L. R. A. (N. S.), 94, and on page 206 the court says:

"It can hardly be contended that it was ever the intent of the law to hold that a private easement could be created over the lands of another at a time when they were open and uninclosed."

The same principle was announced in the case of *Rowland* v. *Wolfe*, 1 Bailey (S. Car.), 56, 19 Am. Dec., 651.

Again, the question was before the supreme court of South Carolina in the case of *Sims* v. *Davis & Tygart*, 1 Cheve, 1, 34 Am. Dec., 581.

The supreme court of Massachusetts in the case of *Commonwealth* v. *Fisk*, 8 Metcalf, 238, at 245, said:

"But the land was never fenced, nor laid out as a square or public area. Being of little value, it lay uninclosed, and was passed over at pleasure. But such passing over uninclosed lands creates no title to them. The persons passing over them are not trespassers, but they acquire no rights; and the lawful owners may fence them in, or otherwise use them, at their own pleasure."

The decisions of the courts have not all been in accord on this subject. In *Worrall* v. *Rhoads*, 2 Wharton (Pa.), 427, 30 Am. Dec., 274, the court reached an entirely different conclusion.

It is urged that there is no difference between the right to acquire a prescriptive title in uninclosed land and the right to acquire such title in inclosed land; that there is an actual boundary around both;

that one is visible and the other invisible; that a prescriptive title arises from a supposed grant in the first place; and that there is just as much likelihood that there was a prior grant over uninclosed land as over inclosed land.

This rule seems to have been followed in West Virginia. *Walton* v. *Knight,* 62 W. Va., 223, 58 S. E. Rep., 1025.

The rule in Pennsylvania seems to have been modified by the act of the legislature. The presumption that a title by prescription arises from a grant is a legal fiction. Formerly a title by prescription arose only when the right claimed had existed for a period beyond the memory of man, but now it is a period fixed by legislative enactment. Such a title is acquired by the mere occupancy or taking possession of the real estate of another and continuing that occupancy for the statutory period, under a claim of right.

It is a matter of common knowledge that the owner of uninclosed and unused land frequently permits his adjoining neighbor to pass over his premises when it is not interfering with any use that the owner is then making of his property. This is a mere neighborly convenience and not intended by the owner of the property, or claimed by the party using it, to be otherwise. In order to create a title by prescription the use by the owner of the dominant estate must be in conflict with the apparent use made of his property by the owner, or be of such a nature as to afford an indication to the owner that a right is claimed over his property. The supreme court of Alabama in the case of *Trump* v. *McDonnell,* 120 Ala., 200, 24 So. Rep., 353, in discussing the question when an easement by prescription arises

over an uninclosed woodland, or lands which had
once been used for agriculture but had been turned
out and left open, says at page 304:

"The presumption in such cases is that the user
is permissive; and it is a perfectly natural presump-
tion, since the use conflicts with no interest of the
owner in the land, does not interfere with any use
he presently desires to make of it, nor curtail or
limit in any way his enjoyment of it in the state and
condition in which he has put it or allowed it to re-
main, and very frequently, as in this case, conserves
the ends of good neighborhood."

The supreme court of Massachusetts, in the case
of *Proprietors of Kennebeck Purchase* v. *Springer,*
4 Mass., 416, in discussing the same question says,
at page 419:

"To constitute a disseizin of the owner of uncul-
tivated lands by the entry and occupation of a party
not claiming title to the land, the occupation must
be of that nature and notoriety, that the owner may
be presumed to know that there is a possession of
the land adverse to his title; otherwise a man may
be disseized without his knowledge, and the statute
of limitations may run against him, while he has no
ground to believe that his seizin has been inter-
rupted."

A right of property should not be acquired against
the interest of the owner, unless by some overt act
that will notify him of the claim of the owner of the
dominant estate adverse to that of the owner;
"merely using what is open to use, without more, no
presumption arises that the use is adverse."  *Sprow*
v. *Boston & Albany Rd. Co.,* 163 Mass., 330, 39 N. E.
Rep., 1024.

The use must be permanent and of such a nature

that it will notify the owner of the claim, or else be in opposition to some use that the owner was then making of his own property. A continued use of a passage over an uninclosed vacant lot in a city by the owner of an adjoining lot in going to and from the residence thereon to the public street will not ripen into an easement by prescription unless the passage is constructed so permanently as to give notice of a claim of right. The mere making of a beaten path by walking in a direct line from the residence to the street, and at times spreading cinders and ashes thereon, is not such an infringement on the rights of the owner as will give him notice of an adverse claim.

Now this principle is referred to by the supreme court of this state in the case of *Lane* v. *Kennedy,* 13 Ohio St., 42. On page 47, in speaking of the adjoining proprietor to the public highway having enclosed part of a public road, the supreme court says:

"He infringed no right which was then enjoyed or apparently desired. Nothing was done to excite the apprehension of the public or to call for its protest. We hear of no *declarations,* and all his acts were consistent with a *temporary* occupancy, by the *permission* or the mere *sufferance* of the public, till the land should be required for its use. In *Kirk* v. *Smith,* 9 Wheat., 288, Ch. J. Marshall says 'it would shock that sense of right, which must be felt equally by legislators and by judges, if a possession, which was *permissive* and *entirely consistent with the title of another* should silently bar that title.'"

In the instant case the tenants of former owners of the said property, and the plaintiff, since he acquired the property, walked from the door of the dwelling-house directly across the defendant's lot

to Himrod avenue. This was continued for more than twenty-one years prior to the bringing of this action. This continuous walking made a path, and at times some ashes or cinders were spread along this path by these tenants. The lot now owned by defendant up to this time was not enclosed and was not being used for any purpose.

We do not think that such use of defendant's lot creates an easement by prescription in favor of plaintiff. The judgment in this case is in favor of the defendant.

*Judgment for defendant.*

FARR, P. J., and ROBERTS, J., concur.