BOARD OF EDN. OF PULTNEY TWP., BELMONT COUNTY, APPELLEE, *v.* NICHOL ET AL., APPELLANTS.

(No. 764—Decided May 29, 1942.)

*Mr. Kenneth G. Cooper,* for appellee.
*Messrs. Thornberg & Lewis,* for appellants.

PHILLIPS, J.   This case comes into this court on the appeal of defendant, E. W. Nichol, on questions of law and fact, from a finding and judgment of the Court of Common Pleas of Belmont county in an action to quiet title to lands situated therein, and was submitted to us on a transcript of the testimony taken below.

Plaintiff alleges in its petition that it is the owner in fee simple of, and for more than twenty-one years prior to the filing of its petition was in open, notorious, adverse and continuous and hostile possession of, one

and seven-tenths acres of land situated in Pultney township, Belmont county, hereinafter referred to as the "whole parcel," which includes a half-acre tract, hereinafter designated as tract five, and prays that defendants be compelled to disclose their interests, if any, therein; that this court declare such interests null and void; that its title to the whole parcel be quieted in it, and for such other relief as may be proper.

All answering defendants disclaim any interest in the disputed lands, except defendant, E. W. Nichol, who by answer denies the allegations of plaintiff's petition, and any right, title or interest of his codefendants therein to all of whom together with plaintiff he claims adverse possession, and alleges conveyance of tract five to him by all the heirs of William Nichol deceased; that plaintiff ceased to use such lands for school purposes in 1934, since which time he has openly claimed full and complete possession of and title to the whole parcel, and asks that title thereto be quieted in him.

By amendment to his answer, by interlineation and leave of court during trial, he alleges ownership of a right and easement for roadway purposes from the easterly point of tract one across tracts one, two and three by himself and his predecessors in title by open, notorious, continuous and adverse use for more than twenty-one years prior to the filing of plaintiff's petition, and the right to use tracts two, three and four for pasture and the deposit of stone, crops, manure, and other farm materials; and that he has used such lands for such purposes for more than twenty-one years.

By supplemental amended answer and cross-petition filed in this court he alleges that on or about August 23, 1858, William Tarbet gave plaintiff permission to use tract five for school purposes, and claims title

thereto because it was included in the description of a deed executed to his father, William Nichol, May 1, 1872, by the sheriff of Belmont county in a partition 'uit; that on September 27, 1889, William Nichol deeded the coal in and underlying that tract to another, which coal land is no part of tract five to which plaintiff seeks to quiet title; that by the will of his father he was devised an interest in the whole parcel; that thereafter by various conveyances, other devisees of William Nichol, conveyed all their interests therein to him, and alleges legal title to and ownership thereof in himself. He further alleges that neither he nor his predecessors in title ever sought to deprive plaintiff of the use of the whole parcel, or to curtail its use thereof; that plaintiff's use of tract five was a distinct advantage to other near-by lands of his and his predecessors in title and of William Tarbet and his successors in title, and increased the value thereof; that for more than twenty-one years prior to the filing of plaintiff's petition, he and his predecessors in title, used a wagonway extending over and across tracts one, two and three from the public highway to his lands lying west of the whole parcel, which is approximately in line with an ancient abandoned highway.

Plaintiff filed a supplemental reply to these pleadings denying all the allegations thereof which were not admissions of the allegations of its petition.

The evidence discloses that the whole parcel is composed of five separate parcels, herein designated as tracts one to five inclusive; that all of the tracts, except number five, were acquired by plaintiff board by deeds from William Nichol and Elmer T. Tarbet; that the transfer books of Belmont county for the year 1880 indicate ownership of one and five-eighths acres in plaintiff board by transfer from William Nichol, which includes tract five; that plaintiff board in 1888

conveyed to the latter, two tracts off the north end of tract five containing 142.16 and 3.29 perches respectively; that since the year 1866 and prior to the year 1934 the whole parcel was used continuously for school purposes and periodic social functions and was generally regarded as a social center, over which plaintiff board exercised jurisdiction; that in the year 1866 a substantial brick school building was constructed on the southerly part of tract five, to replace a former school building, and toilets were erected on the westerly line thereof on tracts two and three; that the whole parcel is bounded on the west and southwest by the lands of defendant, E. W. Nichol, and the remainder thereof by a public highway, which was changed to its present location from a former location on the school property, at or about the time of the acquisition of the above mentioned tracts; that an unimproved driveway was constructed from the highway at the east apex of the parcel to the school site; that about the year 1880 the whole parcel was enclosed by a substantial post and board fence, which gradually disappeared by decay, but part of which remained until about fifteen years ago, and some of which posts still stand; that while in repair the fence precluded vehicular travel over any of the tracts to adjoining property, except the entrance and road to the school, which entrance was well defined and which roadway was used by the general public for reaching the school for all purposes; that subsequent to the decay of the fence, defendant, E. W. Nichol, and his predecessors in title used the driveway to the school building irregularly and infrequently as a passageway to Nichol's property on the west, for general agricultural purposes, and on one occasion for hauling lime, not because that was the only means of access to the latter's lands, but because by reason of grade it was more accessible.

Defendant E. W. Nichol testified that: "Our travel was not confined to any single roadway. It was just wherever it was convenient to go through." "Never any road showing beyond the road leading over tract 1 to the schoolhouse." "William Nichol traveled any place over tracts that was convenient. We traversed the grounds in different positions, sometimes back of the school, sometimes in front of it, but that was our main entrance into the field." "Used it as a general entrance for hauling in and hauling out crops, across wherever it was convenient." "I came through here, came through here at various points and through here, any place that I happened to be in the field. Any of this is accessible for egress." Referring to tract one, "We traveled over it. I suspect I was trespassing, but I traveled over it nevertheless." "I have trespassed across this side and this side, this and trespassed in this down here as well as this, trespassed in all directions through here." "Claimed he was trespassing only over part obtained by board from Tarbet, but did not so feel with reference to the tracts the board acquired from his father." "Knew board could cut him off completely at any time." "Never made any claim to full and complete possession until 1934." "Never made any claim to possession to anybody. Never made any claim to board." "Nobody other than board made any claims against tracts two, three and four until 1934." "During the entire time he has known the property it has been under the exclusive control of the board." "Board during all time he has known the land had control and been in possession of schoolhouse site." "Neither Elmer W. Nichol nor William Nichol never assumed control over said land." "Does not claim the right to use tract one as against the board of education or anyone else; just went and used it." "Claims no title nor

interest in tract number one." Under his amended answer makes no claim as to tracts numbers one, two, three and four, except as to a right of way to travel back and forth across them. He claims "no continuous right to pasture." "The deed from his father for tracts conveyed by him to board does not say the land was bought for school purposes."

The sole questions presented by the pleadings and the evidence are: Which party owns tract five in fee simple, and if plaintiff does whether defendant, E. W. Nichol, acquired a right of way or easement by prescription over the parcel, or any part thereof?

Both parties claim title to tract five by adverse possession. Defendant contends that plaintiff's right thereto was permissive, which right could never ripen into adverse possession, and claims an easement by prescription over, but no other right in or title to the whole parcel, which he has used for more than twenty-one years as a passageway to his lands.

There is no evidence of probative value before us and none from which an inference can be drawn that plaintiff's use of tract five commenced by permission from the owner, or that such use was merely a permissive use. On the contrary, defendant, E. W. Nichol, testified that he did not know personally of any verbal permission given to "anybody" to use the school site originally. No other witness testified on that subject, and there is no documentary evidence to that effect. Indeed instead of a presumption of permission the plat attached to the deed to tract three is some indication that at some time there was a grant. The erection of a permanent brick school building on tract five by plaintiff board, which one witness remembers since 1866, and was probably there since 1858, or prior thereto, the board's record title to lands bounding it on three sides, the erection of a post and board fence

around the whole parcel, separating it from the land of defendant, E. W. Nichol, which remained for more than a third of a century, until finally almost completely disappearing by decay, the large shade trees which were planted thereon, its continued undisputed jurisdiction over the parcel, and its recognized right to grant permission for its use for other than school purposes to others, all weigh heavily against the claim of defendant, E. W. Nichol, of permissive use by plaintiff, and in our opinion were notice to the world that plaintiff board asserted ownership to the whole parcel.

It is inconceivable that plaintiff board would thus improve tract five relying upon an oral agreement to protect its title, as it is a matter of common knowledge that such boards do not so extensively improve real estate upon oral permission of the owner.

"In the absence of a license which precludes the possibility of a claim of adverse possession, or the execution of an agreement in accordance with law granting the right of occupancy for a fixed period, the placing of a permanent structure on the land of another constitutes adverse and hostile possession under which title may be claimed after twenty-one years." *McCleery* v. *Alton,* 8 C. C. (N. S.), 481, 19 C. D., 97.

Most of the cases cited by defendant, E. W. Nichol, deal with possession under oral permission, not applicable here for the reason that there is no evidence of oral permission and no circumstances tending to indicate or even raise a presumption of such permission.

The long quiet and uninterrupted possession of tract five by plaintiff board raises the legal presumption of an ancient grant and that it had "a full right thereto, without which it could not have been suffered to continue so long in possession of it." See *Pavey* v. *Vance,* 56 Ohio St., 162, 46 N. E., 898. Upon such a

showing this court is bound to presume a legal origin if such is possible, in favor of the right, and whether a conveyance is to be presumed from the circumstances.

While the case of *Pavey* v. *Vance, supra,* deals with the doctrine of prescription, yet the same doctrine applies with equal force to adverse possession.

Many Ohio cases deal with the question of a presumption of grant as being the basis of title by adverse possession, and the right of the jury or court to indulge in such presumption is well settled. See *Frazier* v. *Brown,* 12 Ohio St., 294; *Elster* v. *Springfield,* 49 Ohio St., 82, 30 N. E., 274.

The presumption springs from possession and has no existence in favor of one who attacks the right of possession in another. See *Lessee of Blake* v. *Davis,* 20 Ohio, 231; *Harman* v. *Kelley,* 14 Ohio, 502, 45 Am. Dec., 552.

Possession thereof under a general claim of title is *prima facie* title in fee in plaintiff board. While the presumption of such a grant may be rebutted by a contrary presumption yet in order to repel or destroy the presumption facts must be shown which establish the legal impossibility of such supposed conveyance. See 17 Ohio Jurisprudence, 106 to 109, Sections 85 and 86; also, *Pavey* v. *Vance, supra.*

The rule announced in 2 Corpus Juris Secundum, 874, Section 231, is:

"Long continued, undisturbed possession of real property, accompanied by corroborating circumstances, gives rise to a presumption of a lost grant to the occupant, or to one through whom he claims."

The nature and purpose of the presumption, as announced in 2 Corpus Juris Secundum, 875, Section 231, is that:

"The presumption of a lost grant is a rule of law or legal fiction, and its purpose is to supply the place of

positive proof, and is justified because of the difficulty of preserving muniments of title, and of the public policy of quieting title by supporting long and uninterrupted possessions." See, also, *Pavey* v. *Vance, supra.*

The possession and use of tract five by plaintiff board was open, notorious, adverse, continuous and hostile for more than twenty-one years. All the elements of adverse possession were present, which could only be defeated by a showing of permissive use, and any of the stated presumptions would apply.

"But it is not material on which ground we regard a right to an easement by prescription rests, whether on that of a grant presumed from lapse of time, or from the justice and policy of protecting one who has long used and enjoyed a right in the character of owner, the practical result is the same  *  *  *." *Pavey* v. *Vance, supra,* 172.

" 'Every species of prescription by which property is acquired or lost is founded on the presumption that he who has had a quiet and uninterrupted possession of anything for a long period of years is supposed to have a just right thereto, without which he could not have been suffered to continue so long in the enjoyment of it.' Brown's Institute of the Whole Law, 418." *Pavey* v. *Vance, supra,* 172.

Indeed, instead of a presumption of no grant as urged by defendant, E. W. Nichol, as heretofore suggested, the plat attached to the deed to plat three is some indication to us that at some time there was a grant, and the fact that he asked for a right of way through the school grounds and submitted a proposed written agreement to the board granting that right, his testimony that he knew the board could "cut him off at any time," that he was "trespassing when he went upon the lands," in fact nearly all his acts in-

·dicated by his quoted testimony are badges of his rec-·ognition of the board's ownership thereof.

The William Nichol coal deed of 1889, specifically ·excepting "what land has been sold the Board of Edu-·cation of Pultney township," and the attached plat showing a more or less rectangular school tract ex-·tending in section two, the acceptance by William Nichol of the deed from plaintiff board for a portion ·of that tract in the north-east corner thereof, the ex-·clusion of the whole parcel in the deed from defendant E. W. Nichol's sister to him, prior to filing his peti-tion herein, are all signs of plaintiff board's ownership ·of tract five.

Now, as to the claim of defendant, E. W. Nichol, of ·a right and easement across the whole parcel, his tes-timony convinces us that he has shown no right by prescription to the use thereof; that his use was a ·casual use, and nothing other than the use which the ·general public would make of it, a permissive use, which could not ripen into a prescriptive. right. He ·did not follow a beaten path, but crossed the land wherever convenient. While there is no evidence of ·a roadway thereover except to the school building, yet it is undisputed that defendant, E. W. Nichol, did ·travel across it, but not by reason of necessity, as he had highway access to his lands, and such a road as was situated on tract one ended at and was used only ·for the purpose of ingress and egress from the school building, and he used it only as the public generally might use it as a way of convenience without the knowledge of plaintiff board. Certainly by such use he would acquire no prescriptive right to do so.

It is a matter of common knowledge that rural ·school properties are used by the public generally for private uses, passageways to adjoining lands, and for public functions, and their use differs as a matter of

custom, from the public use of private property. The public attitude is that school property is public property.

We believe that the rule applicable to his claim of a right and easement across the whole parcel was announced in the case of *Kilburn & Another* v. *Adams,* 48 Mass., 33, 39 Am. Dec., 754, and quoted by this court in *Davidson* v. *Dunn,* 16 Ohio App., 263:

" 'The rule we think is, that where a tract of land, attached to a public building, such as a meeting house, town house, school house, and the like, and occupied with such house, is designedly left open and unenclosed, for convenience or ornament, the passage of persons over it, in common with those for whose use it is appropriated, is, in general, to be regarded as permissive and under an implied license, and not adverse. Such a use is not inconsistent with the only use which the proprietors think fit to make of it; and therefore, until they think proper to enclose it, such use is not adverse, and will not preclude them from enclosing it, when other views of the interest of the proprietors render it proper to do so. And though an adjacent proprietor may make such use of the open land more frequently than another, yet the same rule will apply, unless there be some decisive act, indicating a separate and exclusive use, under a claim of right. * * *' "

In the case of *Davidson* v. *Dunn, supra,* this court said in paragraphs two and three of the syllabus:

"Continuous use of a passageway over an uninclosed vacant lot in a city by the owner of an adjoining lot in going to and from the residence thereon to the street will not ripen into an easement by prescription, unless such passageway is of such a permanent construction as to give notice of a claim of right.

"The making of a beaten path across an uninclosed vacant city lot by walking from the residence on an

adjoining lot to the street and return, and at times spreading cinders or ashes thereon, is not such an infringement by the owner of the adjoining lot on the rights of the owner of the vacant lot as will give notice of an adverse claim.''

A similar conclusion is reached in this case, and is supported by the case of *Schulenbarger* v. *Johnstone,* 64 Wash., 202, 116 P., 843, 35 L. R. A. (N. S.), 941, which holds:

''It can hardly be contended that it was ever the intent of the law to hold that a private easement could be created over the lands of another at a time when they were open and uninclosed.''

It is well settled in Ohio that adverse possession can not be acquired against the state government. See 1 Ohio Jurisprudence, 534, Section 37.

However, having disposed of this case as we have, we deem it unnecessary to determine whether upon the evidence presented in this case such possession can be acquired against plaintiff board.

Like the lower court this ''court has devoted a great deal of time to this case, and has arrived at the conclusion that the title of this property has been firmly established in plaintiff unincumbered by any rights of the defendant thereto.''

The opinion of Judge Belt of the Court of Common Pleas, and the briefs of counsel for the respective parties, have been helpful to the writer in preparing this opinion, and we pause to note that fact and acknowledge that help.

An entry drawn in conformity with this opinion may be presented.

*Judgment accordingly.*

NICHOLS, J., concurs.
CARTER, P. J., concurs in judgment.