McCUNE et al., Appellees,

v.

BRANDON et al., Appellants.

[Cite as *McCune v. Brandon* (1993), 85 Ohio App.3d 697.]

Court of Appeals of Ohio,
Coshocton County.

No. 92–CA–13.

Decided March 31, 1993.

*Brent W. Shenk,* for appellees.

*Van Blanchard,* for appellants.

WILLIAM B. HOFFMAN, Judge.

Plaintiffs-appellees, Helen McCune et al. ("appellee"), are the owners of a tract of approximately one hundred twenty-five acres in Oxford Township of Coshocton County. In March 1990, defendant-appellant, Bruner Land Company, purchased a tract of approximately one hundred twenty-two acres in Tuscarawas County. The tracts "corner" on one another with the southeast corner of the McCune land "cornering" on the northwest corner of the Bruner land. Subsequent to March 1990, Bruner sold approximately twenty-seven acres of its tract to appellant-Brandon on an unrecorded land contract, which property contains a farmhouse residence structure. This latter parcel does not abut upon a public roadway and is dependent for access to Coshocton County Road 106 on a gravel lane running through appellee's land from Coshocton County Road 106 to its junction with Brandon's land at a point where appellee's and Brandon's lands corner. The length of the subject lane is approximately .4 miles.

Predecessor in title to appellants was the Hursey family. It is undisputed that both the Hursey family and the McCunes used the subject lane without hinderance, obstruction, restriction or limitation by anyone in excess of forty years. As appellee points out:

"Over the years, the McCune family used the lane to reach their farm fields in Coshocton County and Tuscarawas County and to move oil from storage tanks back their lane [sic] at the base of the hill. Raymond and Mabel Hursey used the lane to go to and from their residence and to move oil from the same storage tank site mentioned above. Neither family attempted to stop the other from using the lane.

"Q. Okay. Did you ever ask the Hurseys to stop using lane?

"A. No, we did not.

"Q. Did you ever—as far as you can recall, did you ever consider such a thing?

"A. No, we did not.

"Q. Why not?

"A. Well, because we always got along with them. Like I said, Raymond would do grading and maintenance and we would also do it. There was never taking—they never took advantage of the fact that they were using the lane. They never tried to widen it. They never cut our trees. They never trespassed. We just got along as neighbors. Back then, a handshake meant a lot."

Dane Hursey's testimony corroborates Helen McCune's testimony as cited *supra.*

From 1978 until May 1989, no one lived on the Hursey land and use of the lane by the Hursey family consisted of periodic visits to check on the house and to hunt. In May 1989, Mabel Hursey conveyed her property to Litco International, Inc. In December 1989, Litco conveyed the Hursey property to Litco Manufacturing, Inc. and in March 1990, Litco Manufacturing conveyed the property to Bruner cited *supra.* Bruner developed the Hursey property by surveying out eleven parcels, ten of which were allotted frontage on Roads 108 and 107 leaving the eleventh land locked and apparently dependent for its access upon the subject lane on the McCune farm. Bruner requested a right-of-way but Bonnie McCune declined his request.

Appellant Jerry Brandon approached Bonnie McCune and introduced himself as the owner of parcel No. 11 of the Hursey property. Trial testimony demonstrates that there was some dispute as to the upkeep of the lane in exchange for Brandon's using it that instigated the instant litigation.

After hearing the matter the Court of Common Pleas of Coshocton County found appellants had acquired no property rights in the lane and permanently enjoined them from entering the land.

Appellant raises the following sole assignment of error:

"I. The trial court erred in its finding that the use of the lane by defendants'-appellants' predecessors in title (Hurseys) was permissive in nature, and in its judgment that defendants-appellants have acquired no property rights in said lane."

At the outset we note that appellant claims that he has acquired a prescriptive easement in the subject lane. We cite the following:

"It is sometimes said that the same requisites are involved in prescription as in adverse possession. This is not an accurate statement." 2 Thompson on Real Property (1980), Easements, Section 340, noting jurisdictions such as Minnesota, Illinois, and California where the requisites are identical.

Notwithstanding that this court's research discloses no Ohio authority equating all the elements of adverse possession (open, notorious, adverse, continuous and hostile) to prescription, it is certain that the adverse element must be demonstrated. (See discussion *infra* as to the adverse element.)

Specifically, "prescription" has been defined as:

" * * * [N]ot a grant by will or deed or instrument in writing, but titled by long-continued use and possession, such as 21 years or over, which is adverse, open and without interruption." 2 Ohio Jurisprudence 3d (1977) 499, Adverse Possession, Section 10.

■ Central to our resolution is whether the subject use of the lane was either permissive or adverse (non-permissive). The trial court spoke directly to this question, reasoning:

"Initially the court finds that any use by defendants or their predecessors in title, including members of the Hursey family, was *not an adverse use such as would create a prescriptive easement.* On the contrary, it is clear from the evidence that the lane in question served estates to benefit both dominant and servient estate, being used, *inter alia,* for access by plaintiff and their agents to the more remote areas of plaintiffs' sprawling farm.

"The court further finds that any use by the Hursey family of the lane in question between December 24, 1936, when the Hursey family moved in, and May 9, 1989, when the Hurseys sold their land to Litco International, Inc., was a *permissive use* to the extent that any claim of prescriptive rights by the Hurseys of their successors would also be defeated." (Emphasis added.)

Appellee's response buttresses the trial court's decision:

"When one uses a driveway over another's land, continuously, *without leave,* without objection by the owner * * * it is adverse, and an uninterrupted use and * * * creates an easement in the land. The owner of the servient estate, to defeat the title in the other, has the burden of proving that the use of land was under some license, indulgence, *neighborly accommodation* or special contract, inconsistent with a claim of right by the other party." (Emphasis added.) *Manos v. Day Cleaners & Dyers, Inc.* (1952), 91 Ohio App. 361, 48 O.O. 455, 108 N.E.2d 347, paragraph one of the syllabus.

Applying the above quotation to the case *sub judice* there was undisputed evidence presented by both parties that use of the lane by them was permissive and non-adverse in nature.

Also applicable is the following:

"Open, continuous and exclusive use of real property with the knowledge but not the permission of the owners and their predecessors in interest is an adverse user which ripens into a prescriptive right at the expiration of twenty-one years."

*Meinke v. Schober* (C.P.1943), 38 Ohio Law Abs. 467, 29 O.O. 1, 12 Ohio Supp. 41, paragraph one of the headnotes. See, also, *Pultney Twp. Bd. of Edn. v. Nichol* (1942), 70 Ohio App. 467, 25 O.O. 206, 46 N.E.2d 872, paragraph two of the syllabus, where permissive use did not ripen into a prescriptive right.

Finally in a decision relied upon by both parties, the Supreme Court of Ohio in *Pavey v. Vance* (1887), 56 Ohio St. 162, 46 N.E. 898, paragraph one of the syllabus, stated:

"Where one uses a way over the land of another *without permission* as a way incident to his own land, and continues to do so with the knowledge of the owner, such use is, of itself adverse, and evidence of a claim of right. And where the owner of the servient estate claims that the use was permissive, he has the burden of showing it." (Emphasis added.)

As the trial court determined, appellee met her burden of proof, *i.e.*, permissive use.

For the reasons stated *supra*, appellant's sole assignment of error is not well taken and is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SMART, P.J., and GWIN, J., concur.