OPINION
Plaintiffs-appellants, Michael and Janet Sepela ("the Sepelas"), appeal[1] the trial court's determination that they do not have a prescriptive easement over the property of defendant-appellee, MBL Partners, Ltd. ("MBL").
The Sepelas own property that is adjacent to property owned by MBL. Both properties have frontage on Main Street in Milford, Clermont County, Ohio. The property owned by MBL is the larger parcel and it extends not only to the side of the Sepelas' property, but also behind the rear of their property. Both properties contain commercial buildings that are leased to businesses.
The Sepelas' property was previously owned by United Dairy Farmers. The building on the property was leased to Ruth and Philip Stevens beginning in 1966. The Sepelas purchased the property from United Dairy Farmers in 1986 and the Stevens continued to lease the property. Ruth Stevens ("Stevens") operated a Skyline Chili restaurant in the building from 1967 until the restaurant moved to another location in March 1996. When Stevens vacated the property, the Sepelas leased the property to Walter Buckner ("Buckner"). After remodeling, Buckner operated a W.D. Ribs restaurant in the building.
The property now owned by MBL was originally owned by Johnny Parsons. Parsons sold the property to Fisher Foods on an unknown date. Fisher Foods then sold the property to Secondhand Fishland Properties ("Fishland") in December 1973. Fishland sold the property to Cinlot, who sold the property to MBL in February 1997. The commercial building on MBL's property was occupied by several businesses, including Larry's Fine Foods and Fazios. The building is now occupied by a Big Lots store.
The space next to and behind the building on the Sepelas' property is not large enough for vehicular traffic. The building on the adjoining lot is surrounded by a parking lot. The parking lot runs next to and behind the building on the Sepelas' property. When Stevens began operating the Skyline restaurant in 1967, delivery and garbage trucks gained access to the rear of the building by driving over the neighboring parking lot. Johnny Parsons, the owner of the adjoining property at the time, gave verbal permission to the Stevens for trucks to drive across the parking lot to the rear of the restaurant.
Although the adjoining property was sold several times, Stevens continued to use the neighboring lot to access the rear of the building. After Stevens vacated the building, Buckner used the adjoining lot for access during remodeling of the building and after his restaurant opened. MBL purchased the adjoining lot in March 1997 and in September 1997 placed posts and a cable across the end of the lot, blocking vehicular access to the rear of the Sepelas' property. MBL now wants to develop the property behind the Sepelas' building and cut off access to make the property marketable.
On September 16, 1997, the Sepelas filed a complaint in the Clermont County Court of Common Pleas seeking, inter alia, a judgment that they had acquired a prescriptive easement over a portion of MBL's parking lot. The trial court granted a preliminary injunction to the Sepelas on September 22, 1997. Both parties filed motions for summary judgment. On December 31, 1997 the trial court denied both motions for summary judgment and dissolved the preliminary injunction. On September 29, 1999, the trial court issued written findings of fact and conclusions of law and a judgment entry was filed on November 1, 1999. In its decision, the trial court found that the Sepelas were not entitled to a prescriptive easement over MBL's property because they had not established that their use of the property was adverse to MBL. The Sepelas appeal the trial court's determination and raise the following single assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS BY FINDING THAT APPELLANTS HAD NOT ADVERSELY USED THE LAND IN QUESTION SUFFICIENTLY ENOUGH TO RIPEN INTO A PRESCRIPTIVE EASEMENT.
To establish an easement by prescription, the claimant must prove that possession was acquired by open, notorious, continuous and adverse use of the property for a period of twenty-one years. Goldberger v. BexleyProperties (1983), 5 Ohio St.3d 82; Nusekabel v. Cincinnati Public SchoolEmployees Credit Union, Inc. (1997), 125 Ohio App.3d 427, 433. The claimant has the burden of proving these elements by clear and convincing evidence. Coleman v. Penndel Co. (1997), 123 Ohio App.3d 125, 130; J.F.Gioia, Inc. v. Cardinal American Corp. (1985), 23 Ohio App.3d 33, 36-37. If a claimant establishes a prima facie case, the burden shifts to the land owner to show that the use was permissive. Perry v. Vance (1897),56 Ohio St. 162, paragraph one of the syllabus. However, the ultimate burden of persuasion rests with the claimant. Id.
We note that prescriptive easements are not favored in the law because they result in a legal titleholder forfeiting rights to another without compensation. Shell Oil Co. v. Deval Co. (Sept. 24, 1999), 1999 Ohio App. Lexis 4423, at *14, Hamilton App. No C-980783, C-980809, unreported. The trial court found that although the Sepelas' use of MBL's property was open, notorious, and continuous for twenty-one years, the use was not adverse.
The elements of open and notorious use are related and are often construed together. Use of another person's land is open when the use of the disputed property is without attempted concealment. Katz v.Metropolitan Sewer District (1997), 117 Ohio App.3d 584, 589. To be notorious, "the use of the property must be so patent that the true owner of the property could not be deceived as to the property's use." Id.
Stevens testified that she and her husband operated a Skyline Chili restaurant on the Sepelas' property for almost thirty years. She stated that the restaurant opened in 1967 and that deliveries were made through the back door. She also stated that after the restaurant had been open for about a year, a trash dumpster was placed behind the building. Stevens testified that during the time Skyline was in the building, delivery and trash trucks reached the rear of the property by driving through the lot next door.
Buckner testified that when he began remodeling the building, deliveries were made to the rear of the building. He expanded the rear of the building to add a walk-in cooler and a grill area. He also poured a concrete pad for a dumpster in an area behind the rear of the building. Although the restaurant expansion and the dumpster were on the Sepelas' property, trucks used MBL's property to access the rear of the restaurant.[2]
Neither Stevens nor Buckner attempted to conceal their use of the adjoining property. Deliveries were made during the day to the rear of the building. The evidence also shows that neither Stevens nor Buckner misrepresented the true nature of their use of the adjoining property. Accordingly, use of the property was open and notorious.
A claimant's use of the disputed property must also be continuous and must last for twenty-one years. Use is "continuous" if it is neither interrupted by acts of the owner, nor abandoned by the adverse user.Keish v. Russell (Feb. 17, 1995), Athens App. No. 94CA1618, unreported. Temporary interruptions will not defeat an easement by prescription as long as the continuous character of possession is unbroken. Branch HillPost No. 5353 Veterans of Foreign Wars v. Elmitt (May 28, 1991), Clermont App. No. CA90-10-098, unreported, at 5. To establish possession for the twenty-one year period, an individual may "tack" to his period of adverse use the periods of adverse use by previous owners in privity with him.Lyman v. Ferrari (1979), 66 Ohio App.2d 72, 76, citing Zipf v. Dalgarn
(1926), 114 Ohio St. 291, 296.
According to Stevens, the adjoining property was used for access to the rear of the building from 1967 until March 1996. When Buckner took possession of the building, he continued to use the adjoining property for access, first during remodeling, and then during the operation of his restaurant. We note that the building was vacant for a period of time after Skyline moved and before Buckner took possession. However, this temporary interruption did not defeat the continuity of the use as it was only for a short period of time in between tenancies. In addition, any easement by prescription would have accrued before Buckner took possession because the Stevens' use of the property was without permission from at least 1973 until 1996, a period which is greater than the time necessary to create a prescriptive easement. Therefore, we find that use of the adjoining property was continuous and that the use lasted for at least twenty-one years.
Finally, use of the disputed land must be adverse to the owner of the property. Use of property is adverse or hostile when it is without permission and inconsistent with the rights of the property owner.Kimball v. Anderson (1932), 125 Ohio St. 241, 244; Hindall v. Martinez
(1990), 69 Ohio App.3d 580. It is sufficient to prove adverse use if the use is inconsistent with the rights of the title owner and not subordinate or subservient thereto. Kimball at 244. Use by permission or under a license is not adverse. Coleman v. Penndel Co. (1997),123 Ohio App.3d 125, 132. Whether a use of land is found to be adverse or permissive must depend upon all the facts disclosed by the evidence in a particular case. Quinter v. Soifer (Aug. 12, 1981), 1981 WL 2877 at *4, Miami Co. App. No. 80-CA-57, unreported. The character of the use and the nature of the claimed easement may disclose whether the use is adverse. Id.
Stevens testified that Johnny Parsons, who owned the adjoining property in 1967, gave permission to the Stevens to drive through his property to reach the rear of their building. Because this use of the adjoining lot was with the express permission of the owner, it cannot be considered adverse. The Stevens' permission to use the land from Johnny Parsons was a personal and revocable license. Because licenses do not run with the land and are not assignable, any permission to use the adjoining property ended by 1973. Weir v. Consolidated Rail Corp. (1983), 12 Ohio App.3d 63,65-66. Therefore, the Sepelas must show adverse use of MBL's property after 1973.
It is unclear when Parsons sold the property to Fisher Foods, but the record indicates that Fishland purchased the adjoining property from Fisher Foods in December 1973. After the property was sold, the new owners did not mention Stevens' use of their property. Stevens testified that she was friends with the manager of Larry's Fine Foods and Fazios and that nothing was said regarding the use of the property. Buckner continued to use the property without permission of the owners when he took possession.
While Stevens' and Buckner's use of the property was without express permission, the use was not adverse because the adjoining property was a parking lot which was open to the public and the use was not inconsistent with the rights of MBL as the property owner.
In Board of Education v. Pultney Twp. Belmont County v. Nichol (1942),70 Ohio App. 467, the defendant used a school driveway and the adjoining property to access his land. The court determined that the defendant did not have a prescriptive easement over the property because the use was not adverse. His use was "nothing more than the use general public would make of it, a permissive use, which could not ripen into an easement."Id. at 476. The court stated:
 The rule we think is, that where a tract of land, attached to a public building, such as a meeting house, town house, school house, and the like, and occupied with such house, is designedly left open and unenclosed, for convenience or ornament, the passage of persons over it, in common with those for whose use it is appropriated, is, in general, to be regarded as permissive and under an implied license, and not adverse. Such a use is not inconsistent with the only use which the proprietors think to make of it; and therefore, until they think proper to inclose it, such use is not adverse, and will not preclude them from enclosing it, when other views of the interest of the proprietors render it proper to do so. And though an adjacent proprietor may make such use of the open land more frequently than another, yet the same rule will apply, unless there be some decisive act, indicating a separate and exclusive use, under a claim of right.
Id. at 477, quoting Davidson v. Dunn (1922), 16 Ohio App. 263, 268.
In Davidson, the court stated:
 It is a matter of common knowledge that the owner of uninclosed and unused land frequently permits his adjoining neighbor to pass over his premises when it is not interfering with any use that the owner is then making of his property. This is a mere neighborly convenience and not intended by the owner of the property, or claimed by the party using it, to be otherwise. In order to create a title by prescription the use by the owner of the dominant estate must be in conflict with the apparent use made of his property by the owner, or be of such a nature as to afford an indication to the owner that a right is claimed over his property.
Davidson, 16 Ohio App. at 270.
Courts from other states have applied this reasoning to property open to the public and found that such use is not adverse to the owner's rights unless some act is taken to establish an exclusive right separate from that of the general public. See Susquehanna Realty Corp. v. Barth
(N.Y.App. 1985), 485 N.Y.S.2d 795, 108 A.D.2d 909; Thompson v. Scott
(Ore. 1974), 270 Or. 542, 528 P.2d 509; Pettus v. Keeling (Va. 1987),232 Va. 483, 352 S.E.2d 321; Patch v. Baird (Vt. 1981), 140 Vt. 60,435 A.2d 690. Examining this issue, the Arkansas Supreme Court stated that "[w]ere the rule otherwise, there would be but few vacant lots in our cities and towns and uninclosed property in the country which might not be burdened by easements of passageways, as it is a matter of common knowledge that by the indulgence and good nature of the owners people are allowed to go across these uninclosed properties at will and until such time as the owners may desire to inclose them." Boullioun v.Constantine (1932), 186 Ark. 625, 629, 54 S.W.2d 986, 987-988.
We find this reasoning to be persuasive. The parking lot on MBL's land was open to the public for the purposes of driving and parking. The use by the Sepelas' tenants for vehicular access was not inconsistent with the MBL's rights in the property. The tenants did not use the adjoining land in a manner as to afford any indication to MBL or the previous owners that they were claiming a right over the property. The Sepelas' tenants did nothing which would indicate that they were claiming a right adverse to the property owner or that they had an exclusive right separate from the general public. The tenants simply used a parking lot open to the public for access to their property. Although the tenants on the Sepelas' property may have used it more frequently than other members of the public, their use of the unenclosed land was still in the form of an implied license.
We find that based upon the nature and use of the adjoining property, the Sepelas have not shown that their use of the property was adverse to the rights of MBL. Accordingly, the assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.
[1] We sua sponte remove this matter from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] We note that the record contains evidence from MBL that the concrete pad the dumpster was placed on encroaches on their property. However, this fact is not relevant to disposition of the case.