KATZ et. al, Appellants,

v.

METROPOLITAN SEWER DISTRICT et al., Appellees.

[Cite as *Katz v. Metro. Sewer Dist.* (1997), 117 Ohio App.3d 584.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960230.

Decided Jan. 22, 1997.

*Goodman & Goodman* and *Donald P. Morrisroe*, for appellants.

*Richard Ganulin,* for appellees Metropolitan Sewer District and city of Cincinnati.

*John R. Meckstroth, Jr.,* for appellee Board of County Commissioners of Hamilton County, Ohio.

---

SHANNON, Judge.

This is an appeal from the summary judgment entered by the Hamilton County Court of Common Pleas in favor of the defendants-appellees upon the complaint of the plaintiffs-appellants brought pursuant to R.C. 5303.03 [1] seeking an order to remove an existing sewer line running beneath real estate owned by them.

The complaint was filed August 4, 1995, and alleged, *inter alia,* that the plaintiffs-appellants had acquired the real estate by purchase from Alfred B. Katz. The record before us indicates that Alfred B. Katz had acquired the property in April 1961, and that it was conveyed to appellants by deed dated August 24, 1976.

In response, the city of Cincinnati and the Board of Commissioners of Hamilton County, as defendants, filed motions to dismiss the complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief could be granted. On December 22, 1995, the court properly converted the separate motions to dismiss into motions for summary judgment, afforded the parties time to present evidence, and set the matter for hearing. On January 16, 1996, the appellants filed their motion for summary judgment. On March 14, 1996, the court granted summary judgment to the defendants-appellees and denied the appellants' motion for summary judgment, and an appeal was filed from that order on March 27, 1996.

In ruling upon the opposing motions for summary judgment, the court had before it certain affidavits and a joint stipulation of documents. The facts upon which the resolution of the controversy depends are established by those materials, all of which are cognizable under Civ.R. 56.

In his affidavit, Louis H. Katz, one of the appellants, explained the origins of the litigation. While inspecting the real estate, which consists of several parcels within the city of Cincinnati, Katz noticed a truck on the land, which he found to belong to a contractor who had been employed by the Metropolitan Sewer

---

1. The statutory provision is R.C. 5303.03:

"In an action for the recovery of real property, it is sufficient if the plaintiff states in his petition that he has a legal estate therein and is entitled to the possession thereof, describing it with such certainty as to identify the property, and that the defendant unlawfully keeps him out of the possession. It is not necessary to state how the plaintiff's estate or ownership is derived."

District to clean a seven-and-one-half-foot sewer, one of the two sewers that ran beneath the property. Accordingly, Katz contacted a representative of the sewer district, which is owned by Hamilton County and managed by the city of Cincinnati. The representative informed Katz that the sewer district had an "easement over the property for purposes of maintaining a sewer line under the property" and that it needed no permission from Katz and the other owners of the land to perform the work on the sewer. Katz responded that he lacked knowledge of any easement. According to Katz's affidavit, a search of the title to the property failed to reveal any recorded easement, and in his subsequent discussions with representatives of the district, they acknowledged that "there was no easement and no visible way to determine that a sewer was under the property."

Katz inquired of an employee of the contractor who was on site about the length of time he would be working on the sewer. That person, Richard C. Evans, explained that he was "doing work for the Metropolitan Sewer District * * * on their combination storm and sanitary sewer beneath Mr. Louis Katz's parking lot," that the sewer line was "in extremely bad condition" and that in cleaning the larger sewer he noticed a "smaller abandoned sewer" in a state of at least partial collapse. Katz allowed the contractor to continue the work "until April 14, 1994." The record is silent as to whether all work was completed.

The initial predicate of the city's motion to dismiss, one which the county also set forth as an affirmative defense in its answer to the complaint, was that the action was time-barred by R.C. 2305.04, which requires that an action to recover possession of real property be brought within twenty-one years after the cause of action accrued. One of the grounds given by the court in its order granting summary judgment to the defendants and denying it to plaintiffs was that R.C. 2305.04 barred this action. The twenty-one-year period of time mentioned in the statute was connected intimately with the city's second proposition, which was that it possessed, upon facts not controverted within this record, an easement by prescription for the sewers.

To support both contentions, the city submitted the affidavit of Anthony Huang, who was identified as Sewers Chief Engineer with the Metropolitan Sewer District. Huang traced the history of the sewer line through "MSD records dating back to the 1800s." He stated that the sewer [2] originated in 1828 as part of a project by "the Canal Commission" to "protect canal property." We note, parenthetically, that one edge of the real estate in question abuts Central

---

2. It seems to be clear that all parties devoted their attention to the larger of the two sewers, *i.e.*, the seven-and-one-half-foot sewer, although the existence of the smaller, abandoned sewer line was not denied.

Parkway, a thoroughfare in Cincinnati which, at the location of the appellants' property, follows the original route of the Miami and Erie Canal, which, when abandoned as an artificial waterway, was filled in to become a city street.

Huang's research led him to reach the following conclusions: that the canal commission was entitled to take possession of land for canal improvements; that compensation claims had to be paid within one year of possession; that the Procter and Gamble Company owned the property of record in 1851 and had constructed sewers in the area to the knowledge of property owners affected thereby; that a sewer record index map in use prior to 1912 showed a sewer existing on Katz's property; that a 1920 transit map showed a sewer there; that a 1921 city field survey report showed an existing sewer there, open on the street surface so that it was available as a latrine; and that a property appraisal made in 1930 showed an existing seven-and-one-half-foot sewer with the notation "this valuation subject to perpetual sewer extending through the property."

The parties' joint stipulation constituted a composite of references to documents, some of ancient origin. The first of the series of eight references was to the 1825 Ohio Canal documents, which reflected an act by the General Assembly of Ohio dated February 4, 1825, which empowered the canal commissioners to take possession of any lands necessary to accomplish the improvements intended by the legislation. Subsequent references were to maps and other documents that indicate the presence of two sewers on the property built by Procter and Gamble before 1886, to a report dated March 4, 1852, by the city civil engineer showing sewer lines built and in progress, and a 1919 map updated from the 1852 report showing all the sewers built before 1859.

The appellants' cardinal proposition is:

"In an action for the recovery of real property under Revised Code § 5303.03, the party claiming the right to the continued use of a sewer line buried beneath the owners' property is not entitled to summary judgment where the record fails to demonstrate that said use was open, notorious, adverse to the owners' property rights and for a period of at least twenty-one years."

To support their thesis, appellants argue that until Louis Katz saw the contractor's truck and encountered Evans, neither they nor Alfred B. Katz, their grantor, had any knowledge of the existence of the sewer lines. The tenor of that argument, as expanded, is that the statute of limitations governing their recovery of real property did not commence to run until they had actual notice of the subterranean sewers. In context, the appellants contend that the appellees do not, in law, possess an easement by prescription because they failed to prove that their use of appellants' land was open, notorious, adverse and continuous for at least twenty-one years.

Appellants cite *Hindall v. Martinez* (1990), 69 Ohio App.3d 580, 591 N.E.2d 308, which we find to be a succinct, lucid exposition of the law in Ohio bearing on the acquisition of prescriptive easements. There is a factual distinction between that case and ours, but the principles of law involved are identical. In *Hindall*, a dispute arose between owners of adjoining lots over the use of a driveway upon which Martinez had placed obstructions which affected Hindall's use of it. Hindall filed a complaint in 1988 asserting a prescriptive easement over the driveway, which had been laid down originally in 1960 by the builder who had constructed Hindall's residence. Two feet of the driveway encroached upon the Martinez lot, but until their neighborly relationship soured, Hindall's use of it was unquestioned. After the obstructions were put in place, Hindall originally sought a permanent injunction but subsequently asserted the claim of a prescriptive easement. The Court of Common Pleas of Hancock County declared the existence of such an easement, and Martinez appealed.

In affirming that judgment, the Court of Appeals for Hancock County gave a digest of the pertinent law in Ohio. Because we agree with our colleagues in Hancock County, we adopt their definitions of law for our purposes in the case at bar. Judge Thomas F. Bryant, writing for the full court, said:

■ "To obtain a prescriptive easement, a landowner using [another's] property must prove by clear and convincing evidence that such use was (a) open, (b) notorious, (c) adverse to the [other's] property rights, (d) continuous, and (e) in place for at least twenty-one years. *J.F. Gioia, Inc. v. Cardinal American Corp.* (1985), 23 Ohio App.3d 33, 37, 23 OBR 76, 80–81, 491 N.E.2d 325, 330–331. See, also, *Butcher v. Katterjohn* (June 23, 1987), Hardin App. No. 6–85–14, unreported, 1987 WL 13485; *McInnish v. Sibit* (1953), 114 Ohio App. 490, 19 O.O.2d 476, 183 N.E.2d 237.

■ "It is essential to the acquisition of a prescriptive easement that the use of the property be open. The elements that use be both open and notorious are often construed together. To be open, the use of the disputed property must be without attempted concealment. *Foot v. Bauman* (1955), 333 Mass. 214, 217–219, 129 N.E.2d 916, 919 (quoting 2 American Law of Property [1952] 269–270, Section 8.5). To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises. *Foot, supra,* 333 Mass. at 217–219, 129 N.E.2d at 919. In other words, the use of the property must be so patent that the true owner of the property could not be deceived as to the property's use. *Fulton v. Rapp* (1950), 59 Ohio Law Abs. 105, 107, 45 O.O. 494, 495, 98 N.E.2d 430, 431–432.

■ "Open and notorious use is often treated as a substitute for the title holder's actual knowledge of use to trigger the running of the statute of limitations. When a use is open and notorious, the statute of limitations will run whether the cause of action, *i.e.*, the use of the property, is known or unknown to the title holder. *Williams v. Pomeroy Coal Co.* (1882), 37 Ohio St. 583, 589; See, also, *Foot, supra,* 333 Mass. at 218, 129 N.E.2d at 919; 2 Ohio Jurisprudence 3d (1977), Adverse Possession, Section 23; 25 American Jurisprudence 2d (1966), Easements and Licenses, Section 61. The law assumes that an owner of property knows the condition and status of his land." 69 Ohio App.3d at 583–584, 591 N.E.2d at 310.

The material facts in the instant case either have been stipulated or are otherwise not in dispute. The issue decided by the trial court was, clearly, one of law.

■ In reviewing the action taken by the trial court, we conclude that no reasonable mind could find other than that the seven-and-one-half-foot sewer central in this dispute had been in existence for more than twenty-one years as of March 17, 1994, the day upon which Louis H. Katz observed the truck and Evans on his property. In fact, that sewer was constructed more than a century and a half before that date. The fact that Evans was employed to clean it demonstrates that it was a functioning part of the sewer system servicing that area of the city of which the property owned by Katz and the other grantees was a part. Even though the sewer itself, *i.e.*, the bricks, mortar, and piping of which it was constructed, was invisible, the fact of its existence was not. To the contrary, records available to the public, set forth in the filings upon which the court below relied in deciding the issues in this case, show its origin and location. It is a given that the use of the sewer by the city was adverse to the appellants and those who preceded them in the chain of title to the real estate.

We hold, therefore, that the use by the appellees was so patently open, notorious and adverse to the appellants' property rights, for a period of more than twenty-one years, that the court below did not err in granting summary judgment. The pivotal issue, whether the appellants in law must have had actual notice of the use, must be decided adversely to them because the holding in *Hindall v. Martinez, supra,* and the authorities from which it derives establish that the statute of limitations runs whether the use is known or unknown to the holder of the title. Without question, the sewer that was in active use and the smaller, abandoned one were buried beneath the property, and, accordingly, the owners could say in good faith that they had no actual notice of their presence, *i.e.*, that the sewers were not seen by them. That fact, however, is not controlling because the fact of the presence of the sewers had been established by

public records of very long existence, and those records detailed not only sewers beneath the surface of the real estate, but their paths as well.

For these reasons, we hold that the court did not err in granting summary judgment in favor of the appellees, and the first assignment of error is overruled.

The second assignment of error, contending that the trial court erred in failing to grant the appellants' motion for summary judgment, is, similarly, not well taken. Where, as here, the use of a sewer which serves the public has been proved to have been open, notorious and adverse for more than twenty-one years, a court does not err in concluding that, as a matter of law, a prescriptive easement for that sewer exists and, accordingly, does not err in refusing to order its removal.

■ Upon the undenied facts in this case, the judgment below must be affirmed both on the ground that the appellees possess an easement by prescription and on the ground that the appellants' action to compel the removal of the sewer is time-barred by R.C. 2305.04.

If this result seems to ignore or to denigrate property rights accruing to the appellants, we point out the necessity of this large, functioning sewer to the general welfare of the public by quoting compelling language from the 1852 Report of the City Civil Engineer:

"It is the experience of all cities that they must adopt some plan to get rid of the filth which accumulates in them; a disregard of this law of cleanliness is visited with malignant fevers, various contagious and epidemical diseases, and renders more virulent occasional periods of pestilence. The impurities which are necessarily generated in densely populated districts are so considerable, that a due regard to the pleasurable sensations of sight and smell, requires as an imperative necessity the removal of everything that injuriously affects them, and particularly, those which can be done by the force of their own gravitation, not only that they may be passed away so as not to injure the air we breathe, but that they may not be absorbed by the earth, poisoning the waters under it and exhaled in pestilential vapors: This is the legitimate province of a system of house drainage in connection with that of common sewers."

*Judgment affirmed.*

MARIANNA BROWN BETTMAN, P.J., and HILDEBRANDT, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.