The following appeal arises from the judgment of the Columbiana County Court of Common Pleas in which it was determined that Dr. Dean Willett, appellant, had failed to establish a prescriptive easement, implied easement or easement by necessity as related to adjoining land owned by Donald Felger, appellee. For the reasons set forth below, the decision of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion.
 I. FACTS
This case involves a dispute over access to a parcel of land in Leetonia, Ohio. The dispute arose between the owners of two adjoining parcels of property which are located on the south side of Main Street in Leetonia. Appellant owns the westernmost portion of the two parcels of land in question on which he operates his medical practice. A portion of appellant's property is used as a parking area for employees and patients. Appellee owns the property directly to the east of appellant's lot. Appellee's property was once a dedicated public thoroughfare known as Pine Street which had previously been vacated by Leetonia. It is over this property which appellant argues an easement has been established for access to the parking area of his medical practice.
The relevant history behind the ownership of these two parcels begins in February 1948. At that time appellant's lot was owned by Guy Nicolette. In March of 1948, an undivided one-half interest in the lot was transferred to Paul Beaver who maintained the property in conjunction with Nicolette until June of 1953 at which point the lot was conveyed to Leetonia Florists. Leetonia Florists was operated by a partnership consisting of Jensie Nicolette, Joan Guerrier and Julia Feyock until March of 1968. Ms. Feyock testified at the trial that during the period of time she operated the flower shop, customers and employees gained access to the business over what is now appellee's lot in question. It was Ms. Feyock's opinion that there was no other access to the business other than over appellee's property. In March of 1968, Leetonia Florists conveyed the parcel of land to Leetonia Flower Shop which was operated as a partnership by Elizabeth Kegelmyer and Florence Felger. Appellant's lot was subsequently conveyed to Lynn and Jean Ripley in March of 1973. The Ripley's in turn, conveyed the property to Gary and Kathleen Ronshausen on February 16, 1983. That same day, the Ronshausens conveyed the property to Eugene and Nora Perry who maintained the property until August of 1984. At that time, the property was conveyed to DM Real Estate who then transferred the lot to Dr. James Demidovich in December of 1986. The lot was finally conveyed to appellant in March of 1994. During this entire time period, the lot presently owned by appellee was being used as access to the lot now owned by appellant. Furthermore, during the period in question some type of business was being run on the premises requiring customers and/or patients to frequently travel across appellee's lot.
As previously mentioned, the lot currently owned by appellee had once been dedicated as a public thoroughfare until it was vacated by ordinance in 1913. This lot subsequently came under the ownership of Guy Nicolette and Paul Beaver who maintained possession until October of 1965. In October 1965, this lot was transferred to Joan Guerrier and Julia Feyock who were also partners in the floral business which was in possession of the neighboring lot now owned by appellant. In July of 1976 Guerrier and Feyock conveyed the property to Marcia Harrold who maintained ownership until April of 1991. At that time, the lot finally came into appellee's possession.
Upon obtaining ownership of his lot, appellant operated his medical practice on the site with little difficulty. Although the only access to the building and parking lot on the property was by traveling across appellee's lot, appellee initially did not air any objection to such or attempt to impede appellant or his patients and employees from gaining access to the property. However, shortly thereafter a falling out occurred between the two parties which lead to the filing of a complaint by appellant on May 22, 1995 in the Columbiana County Court of Common Pleas. In his complaint appellant alleged that he had obtained a prescriptive easement, easement by necessity and/or an implied easement over a portion of appellee's property. Appellant prayed for declaratory judgment as well as injunctive relief under the complaint. The trial court initially granted a temporary restraining order against appellee prohibiting him from interfering with appellant's access to his medical practice. Subsequently, a preliminary injunction was granted by the trial court in favor of appellant pending a final outcome of this matter.
Appellee eventually raised a counterclaim against appellant requesting that the trial court quiet title with respect to his lot. On March 12, 1996, appellant filed an amended complaint wherein he requested that the trial court declare that he was the owner of the westerly thirty feet of appellee's lot. This matter proceeded to a bench trial on March 13, 1996, at which time evidence and testimony was presented to the trial judge. The matter was taken under advisement at the conclusion of both sides' presentations.
On May 28, 1996, the trial court issued its findings of fact and conclusions of law whereby it held that appellee was the titled owner of his entire lot and that appellant had failed to establish either an easement by prescription or an easement by necessity. Although appellant requested findings of fact and conclusions of law on June 6, 1996, as related to his claim of an implied easement, said request was denied by the trial court. The court held on June 11, 1996, that it had essentially addressed this claim in its initial entry when it held that appellant had failed to demonstrate a strict necessity for the establishment of an easement. Appellant filed a timely notice of appeal from the trial court's decision on June 20, 1996.
Although appellant raises two assignments of error on appeal, he specifies in his brief that if "the Appellate Court determines that the adverse use began in 1968 or 1973, then it will not be necessary to consider the Second Assignment of Error." In that this court does in fact find appellant's first assignment of error to have merit, we will forego addressing the argument proposed under assignment of error number two.
 II. ASSIGNMENT OF ERROR NO. ONE
Appellant's first assignment of error reads:
 "THE COURT ERRED IN COMPUTING THE TIME OVER WHICH APPELLANT AND HIS PREDECESSORS HAD ADVERSELY USED AN EASEMENT OVER FORMER PINE STREET."
In appellant's first assignment of error it is argued that the trial court erred when it indicated that appellant and his predecessors had not used appellee's property for the requisite period of time to establish a prescriptive easement. In its findings of fact and conclusion of law, the trial court stated that the earliest a twenty-one year period could begin for prescriptive easement purposes was July of 1976 since Guerrier and Feyock owned both lots up until that point in time. Appellant alleges that this determination was against the manifest weight of the evidence as testimony and evidence presented at trial indicated that Guerrier and Feyock had completely divested themselves of ownership of appellant's lot in 1968. It is appellant's position that since the flower shop and the property on which it was located was transferred to Elizabeth Kegelmyer and Florence Felger in March of 1968, there no longer was a merger of ownership of both properties. As such, the time requirements for establishing a prescriptive easement are argued to have started to run in March of 1968 and been fulfilled in March of 1989.
 A. STANDARD OF REVIEW
In reviewing the decision of the trial court as to whether the requirements of a prescriptive easement had been established, this court is necessarily constrained by the principle that a judgment supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223,226. Additionally, in considering whether the judgment is against the manifest weight of the evidence, it is important that an appellate court be guided by a presumption that the findings of the trier of fact are correct. Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. In the event evidence is susceptible to more than one interpretation, the appellate court must construe the evidence consistently with the trial court's judgment. Gerijo, supra. Therefore, in order for appellant to prevail on his argument, he must demonstrate that there was no credible evidence which the trial court could have relied upon in reaching its determination that the time requirements for a prescriptive easement did not begin to run until July of 1976.
 B. APPLICABLE LAW
In order to obtain a prescriptive easement, a landowner using a neighbor's property must prove that such use was open, notorious, adverse to the neighbor's property rights, continuous and in place for at least twenty-one years.Hindall v. Martinez (1990), 69 Ohio App.3d 580, 583, citingJ.F. Gioia, Inc. v. Cardinal American Corp. (1985), 23 Ohio App.3d 33,37. The party asserting the existence of such an easement must prove each of these elements by clear and convincing evidence. Katz v. Metro Sewer Dist. (1997), 117 Ohio App.3d 584,589.
In regards to these elements, actions will be considered to be open if the use of the disputed property is without attempts at concealment. Hindall, supra. Additionally, the notorious element requires that the use of the property be "so patent that the true owner of the property could not be deceived as to the property's use." Id. As such, if the use of the property can be considered as open and notorious, actual knowledge by the title owner is not required. Id. As to the requirement that the use be adverse to the neighbor's property rights, a use will be deemed as adverse if it is done without the owner's permission. Id. at 584. Therefore, as in the case subjudice, when an individual uses a way over the land of another as a way to his own land, said actions will be determined to be adverse so long as no permission was given. Id.
In light of the adversity requirement, a landowner may assert the defense of permissive use in an attempt to avoid the establishment of a prescriptive easement. Carlyn v. Garn
(1995), 105 Ohio App.3d 704, 707. However, in the event such a defense is raised by a landowner, he has the burden of showing that such a grant of permission was actually made. Pavey v.Vance (1897), 56 Ohio St. 162, paragraph one of the syllabus.
As to the requirement that the use be continuous for a twenty-one year period in order to establish a prescriptive easement, it is well settled that an individual may "tack" his adverse use with the adverse use of his predecessors in order to meet this requirement. McNeely v. Langan (1871), 22 Ohio St. 32,37; Zipf v. Dalgarn (1926), 114 Ohio St. 291, 296. In order to tack the adverse uses of one's predecessors, it must be established that the party and his predecessors are in privity; the property was sequentially and continuously used; the property was used in the same or similar manner; and the use was open, notorious and adverse to the title holder's interest.Hindall, supra at 584, citing McNeely, supra.
 C. ANALYSIS
After examining the record, we hold that appellant's first assignment of error is well-taken as the time period for establishing a prescriptive easement began to run in March of 1968 and had been fulfilled in its entirety by the time appellant filed his complaint in this action. The two parcels of property were undoubtedly merged in October of 1965 when Julia Feyock and Joan Guerrier obtained title to the land now owned by appellee. At that time, both individuals were also operating Leetonia Florists on the property which is now owned by appellant. However, the dominant and servient estates were severed when the dominant estate (appellant's property) was conveyed to Leetonia Florists in 1968. When this transaction occurred, Julia Feyock had totally divested herself of any interest in appellant's property. Therefore, the two parcels were no longer merged and the time period for establishing a prescriptive easement began to run.
Although the trial court indicates at page eight of its findings of fact and conclusions of law that "Guerrier and Feyock could not have an adverse interest to themselves during 1965 through 1976," a review of the record does not find any support for this statement. A review of the deeds admitted into evidence at the trial clearly indicates, as mentioned above, that Guerrier and Feyock transferred the flower business and the property on which the flower shop was located to a partnership operating as Leetonia Flower Shop in March of 1968. In that neither Guerrier nor Feyock was a member of this new partnership, a merger no longer existed between the two parcels. Therefore, the new owners of appellant's parcel began the time period for prescriptive easement purposes when they used the land now owned by appellee for access to their business.
A review of the record also indicates that once appellant's parcel of land was transferred in March of 1968, the two parcels never again came under common ownership. In that no merger ever subsequently occurred, we must now turn to an examination of whether the use of the property continued from March of 1968 for a period of at least twenty-one years. As previously discussed, an individual may tack his adverse use with the adverse use of his predecessors in order to meet the time requirement. McNeely, supra.
A review of the record indicates that between March 1968 and the time this action was filed, appellant's property was transferred on numerous occasions. However, during this period of time the property was used for various business and professional establishments which attracted frequenters thereto. Numerous witnesses were called during the trial to testify as to the use of appellee's property as access to the businesses located on appellant's parcel of land. Julia Feyock testified that from the time a flower shop was opened on appellant's property in 1953, appellee's property was used to gain access to the business. As a resident of Leetonia for the past eighty-four years, as well as a previous owner of both parcels at issue, it was Ms. Feyock's observation that the only way to gain access to appellant's property was by crossing appellee's lot. No other driveways or streets provided access to appellant's lot.
Further testimony as to the use of appellee's lot was provided by Edwin Huffnagle. Mr. Huffnagle had knowledge of the area as he was a seventy-six year resident of Leetonia, previously operated a business adjacent to appellee's lot and is one of appellant's patients. In his opinion, appellee's lot had continuously been used as access to the businesses located on appellant's lot as there was no other way to gain entry to the premises.
Additional testimony was provided on the subject by way of the introduction of the deposition of Mr. Lynn Ripley. Mr. Ripley owned appellant's lot from 1973 to 1983 during which time he operated a floral shop. During this period of time, Mr. Ripley testified that his customers regularly used appellee's property to access the shop. Mr. Ripley reiterated the fact that the only access customers had to appellant's lot was over appellee's property.
Additional deposition testimony was introduced into evidence as related to statements made by James C. Demidovich, D.O. Dr. Demidovich bought the property now owned by appellant from Mr. and Mrs. Perry in 1984. Prior to that time, the Perry's had been operating a flower shop on the premises. Dr. Demidovich testified that from 1984 until 1994 he used the premises as a location for his medical practice. During that time, his patients crossed appellee's lot to gain access to the medical practice. In 1994, the property was transferred to appellant and continued to be used for a medical practice. Appellant verified that the property continued to be used as such and that his employees and patients used appellee's lot as the sole access to the medical practice. In light of this overwhelming evidence, it can only be held that appellee's lot was used as entry to appellant's lot for prescriptive easement purposes from March of 1968 until the case at bar was filed in May of 1995. Said use was continuous in nature and far exceeded the twenty-one year requirement. Additionally, all parties were in privity to one another so as to fulfill the requirements for tacking the periods of adverse possession.
As a result, the decision of the trial court as related to the computation of time for prescriptive easement purposes is determined to be against the manifest weight of the evidence. This court cannot find any evidence on record which would support a finding that the two parcels were merged until 1976. Therefore, appellant's first assignment of error is well-taken. While the trial court indicates in its findings of fact and conclusions of law that appellee has failed to prove a defense of permission as related to adversity, it does not specify whether the elements of open and notorious possession have been fulfilled in order to fully establish the existence of a prescriptive easement. Although the evidence and testimony provided at the initial hearing seem to overwhelmingly establish these elements, such a determination is a question of fact which must be reserved for the trial court.
For the foregoing reasons, the decision of the trial court is reversed and as such, this matter is remanded for further proceedings to determine if these two elements of a prescriptive easement have been fulfilled so as to perfect appellant's claim.
Cox, P.J., concurs.
Waite, J., concurs.
APPROVED:
 -------------------------- JOSEPH J. VUKOVICH, JUDGE